ARTHUR M. FORTE, as Administrator of the Estate of ROBERT FORTE, Deceased, Appellant, *v.* CITY OF ALBANY et al., Defendants, and NEW YORK CENTRAL RAILROAD COMPANY et al., Respondents.

JOSEPH KUTTLER, as Administrator of the Estate of JOHN KUTTLER, Deceased, Appellant, *v.* SAME, Defendants, and SAME, Respondents.

HENRY SWANKER, Appellant, *v.* SAME, Defendants, and SAME, Respondents.

CHARLES A. KEEFE, Appellant, *v.* SAME, Defendants, and SAME, Respondents.

Argued December 2, 1938; decided January 10, 1939.

*Alexander Diamond* for appellants. The plaintiffs proved a *prima facie* case against the defendants-respondents, and it was error to grant defendants' motion to dismiss plaintiffs' complaints. (*Cohen* v. *Consolidated Gas Co.*, 137 App. Div. 213; 202 N. Y. 578; *Faber* v. *City of New York*, 213 N. Y. 411; *Dzkowski* v. *Reynoldsville Carting Co.*, 216 N. Y. 173; *Kraus* v. *Birnbaum*, 200 N. Y. 130; *Schwarzbaum* v. *Third Ave. R. R. Co.*, 54 App. Div. 164; *Rabinowitz* v. *Solomon*, 221 App.

Div. 366.) Defendant railroad company was negligent in locating and maintaining the steel pillar of the old bridge so that it constituted an unreasonable and dangerous obstruction on the highway. (*Cooke* v. *Boston & L. R. Corp.*, 133 Mass. 185; *Lunn* v. *Andrews*, 268 N. Y. 538; *Stern* v. *International Ry. Co.*, 220 N. Y. 284; *Lambert* v. *Westchester Electric R. R. Co.*, 191 N. Y. 248; *McGettigan* v. *N. Y. C. R. R. Co.*, 268 N. Y. 66; *Haslam* v. *State*, 4 N. Y. Supp. [2d] 59; *D., L. & W. R. R. Co.* v. *Buffalo*, 158 N. Y. 266; *Hatch* v. *Syracuse, B. & N. Y. R. R. Co.*, 50 Hun, 64; *Postal Teleg. Cable Co.* v. *Young*, 172 Ky. 576; *Wolfe* v. *Erie Tel. & Tel. Co.*, 33 Fed. Rep. 320; *Schafer* v. *Mayor*, 154 N. Y. 466.) Defendant railroad company was negligent in failing to provide lights on its pillars, and in creating a " dark pocket " hiding the pillar, ramp and other defects on the highway. (*Allen* v. *Buffalo, R. & P. Ry. Co.*, 151 N. Y. 434; *Barrett* v. *Southern Pacific Co.*, 207 Cal. 154; *State ex rel. Springfield* v. *Cox*, 327 Mo. 152; *McKim* v. *Philadelphia*, 217 Penn. St. 243; *Kaplan* v. *Herman*, 232 App. Div. 513; *Taylor* v. *City of Albany*, 239 App. Div. 217; 264 N. Y. 539; *McGettigan* v. *N. Y. C. R. R. Co.*, 268 N. Y. 66; *Annino* v. *City of Utica*, 276 N. Y. 192; *Durr* v. *N. Y. C. & H. R. R. R. Co.*, 184 N. Y. 320.) Defendant railroad company was negligent in failing to provide lights, guards or adequate warnings in view of the dangerous conditions and obstructions it created on the highway. (*Deming* v. *Terminal Railway*, 49 App. Div. 493; 169 N. Y. 1; *Tinker* v. *N. Y., O. & W. Ry. Co.*, 157 N. Y. 312; *Place* v. *Delaware, L. & W. R. R. Co.*, 157 App. Div. 24; *Durr* v. *N. Y. C. & H. R. R. R. Co.*, 184 N. Y. 320; *Koehler* v. *City of New York*, 262 N. Y. 74; *Annino* v. *City of Utica*, 276 N. Y. 192; *McGettigan* v. *N. Y. C. R. R. Co.*, 268 N. Y. 66.) The negligence of the defendant railroad company was one of the proximate causes of the plaintiffs' injuries. (*Sweet* v. *Perkins*, 196 N. Y. 482; *De Haen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350; *Ivory* v. *Town of Deerpark*, 116 N. Y. 276; *Finkle* v.

*Bolton Landing Lumber Co.*, 148 App. Div. 500; *Gibney* v. *State*, 137 N. Y. 1; *Stern* v. *International Ry. Co.*, 220 N. Y. 284; *Lambert* v. *Westchester El. R. R. Co.*, 191 N. Y. 248; *O' Neill* v. *City of Port Jervis*, 253 N. Y. 423; *Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345.) Plaintiffs established a *prima facie* case of negligence and nuisance against the defendant contractor. (*Charlock* v. *Freel*, 125 N. Y. 357; *Storrs* v. *City of Utica*, 17 N. Y. 104; *McCafferty* v. *S., D. & P. M. R. R. Co.*, 61 N. Y. 178.) Plaintiffs' proof of negligence and nuisance against the defendants-respondents was sufficient to warrant its submission to the jury. (*Khoury* v. *Saratoga County*, 267 N. Y. 384; *Durr* v. *N. Y. C. & H. R. R. R. Co.*, 184 N. Y. 320; *Annino* v. *City of Utica*, 276 N. Y. 192.)

*P. C. Dugan* for respondents. Plaintiffs failed to prove any negligence against the defendants-respondents causing or contributing to the accident. (*Weis* v. *L. I. R. R. Co.*, 262 N. Y. 352; *Palsgraf* v. *L. I. R. R. Co.*, 248 N. Y. 339; *Gambon* v. *City of New York*, 151 Misc. Rep. 201; *Sturman* v. *State*, 244 App. Div. 865; 269 N. Y. 627; *Bailey* v. *Bell Tel. Co.*, 147 App. Div. 224; *Ring* v. *City of Cohoes*, 77 N. Y. 83.)

HUBBS, J. At about two o'clock A. M., on December 29, 1934, an accident occurred involving an automobile being driven on Central avenue in the city of Albany, a heavily traveled street. Two of the occupants of the automobile were killed and two injured. This is an action to recover damages caused by the alleged negligence of the defendants. The complaint was dismissed by the trial court and the judgment was affirmed by the Appellate Division, two justices dissenting.

The determination of this appeal depends largely upon the physical situation existing at the place of the accident. For many years the tracks of the defendant railroad company had been carried over Central avenue, which extends east and west, on an overhead bridge supported by three parallel rows of steel pillars, one on the northerly

side of the street, one on the south of the roadway between the roadway and what was formerly the old trolley road-bed, the third on the south side of the trolley roadbed. The roadway, sixteen feet wide, ran underneath the bridge between the most northerly row of pillars and the row north of the old trolley roadbed. The roadway was made of brick. It might have been wide enough to take care of traffic when constructed, but there had been a great change in traffic by May, 1934, when the Public Service Commission made an order directing the railroad to construct a new bridge, on the ground that public safety demanded it, pursuant to plans which provided for a bridge to span a roadway fifty-six feet wide instead of sixteen feet, the width of the old roadway. The new bridge was designed to be adjacent to the old one and east thereof. The railroad contracted with the defendant William M. Ballard, Inc., to construct the new bridge. At the time of the accident in question the new bridge had been completed, so that trains were being operated over it, but the old bridge was still in place. The highway extending under the old and new bridges was covered by the bridges for a longer distance than formerly, owing to the width of the new bridge which was constructed immediately east of the old bridge and on the same level. To one approaching on Central avenue from the east the structure looked like one bridge over the roadway. A new granite block pavement fifty-six feet wide had been constructed on Central avenue from a point about three thousand feet east of the bridge to a point a few feet east of the new bridge. Under the old and new bridges the old pavement sixteen feet wide continued in use. Where the new pavement ended east of the new bridge there was a sudden rise of six inches from the level of the new pavement to the roadbed just west. Between the new pavement and the brick pavement a space of a few feet was covered with gravel with a top dressing of tar.

As the automobile approached the bridge from the east Central avenue was well lighted but the space under

the bridge looked like a dark tunnel. There were no lights on or under the bridge. Commencing sixteen feet east of the east side of the new bridge and on a line with the north side of the brick pavement a fence had been erected which extended northeasterly for a distance of seventy-one feet to the north edge of the new pavement. The fence was erected to deflect traffic from the new pavement fifty-six feet wide onto the old sixteen-foot brick pavement under the bridges, as the new pavement had not been laid under the bridges north of the north tier of steel pillars and north of the old brick pavement. On the most westerly post of the fence sixteen feet east of the new bridge a red disk warning sign had been placed six feet above the pavement. It was placed so high that the light from an oncoming automobile did not reach it. On the north side of the avenue three hundred and fifty to four hundred feet east of the new bridge was a slow down sign with a street light about thirty-five feet back or west of it. That sign was not lighted or noticeable in the dark by occupants of an automobile approaching from the east.

As the automobile in question approached the bridge moving at a speed of not over thirty miles per hour the driver did not see either sign. He had not passed over the road since the construction of the new bridge had been commenced. He saw the bridge and the fence on his right. The space under the bridges was dark. When the automobile went over the six-inch inequality in the grade of the pavement it was deflected from its course so that it headed toward the south side of the road and the driver was thrown from the seat. At that moment an automobile was approaching from the west on its right or the south side of the road. If the automobile in question were not deflected to the north a collision with the oncoming car was imminent. The driver of the automobile testified that the last he could remember was when he was thrown up from his seat when the automobile went over the six-inch rise. It does appear,

however, that the automobile was immediately swung to the right, or north, out of the course of the oncoming car, and then slightly toward the south when it came into collision with the most easterly of the north tier of steel pillars then in position under the old bridge. That pillar stood at the very northern edge of the brick pavement and about half way between the westerly side of the old bridge and the easterly side of the new bridge. That pillar was not lighted or guarded in any way.

We are asked by respondents to hold as a matter of law that no question as to their negligence was presented for the consideration of the jury, or, if such a question existed, nevertheless that the complaint was properly dismissed as the sole proximate cause of the accident was the defect in the highway for which respondents were not responsible. We are unable as a matter of law to so decide.

The six-inch defect in the road, the darkness under the bridges, the absence of adequate warning signs and the position of the steel pillars on the edge of the brick pavement only sixteen feet wide constituted a situation which the jury could have found to be dangerous and which required the respondents to take measures to guard travelers from. A question of fact existed as to whether respondents had exercised reasonable care to protect travelers on the highway from a danger which they were parties in creating and maintaining.

We are also of the opinion that the six-inch rise in the highway cannot be said as a matter of law to have been the sole proximate cause of the accident. The jury under the facts in this case would have been justified in finding that there was more than one efficient proximate cause of the accident without which it would not have happened. (*Sweet* v. *Perkins*, 196 N. Y. 482; *DeHaen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350.)

In each action the judgment should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.