(March 18, 1993)

■ SHERWOOD GROUP, INC., et al., Respondents, v DORNBUSH, MENSCH, MANDELSTAM & SILVERMAN, et al., Appellants. [594

NYS2d 766] —Order of the Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered March 26, 1992, which denied, in part, defendants' motion to dismiss the amended complaint pursuant to CPLR 3211 (a) (1) and (7), is unanimously modified, on the law, and the defendants' motion granted, to the extent of dismissing the complaint, without costs or disbursements. The Clerk is directed to enter judgment in favor of the defendants dismissing the complaint.

Raymond Meselsohn, was the president of plaintiff, The Sherwood Group, Inc. (Sherwood), a publicly traded company, and participated in Sherwood's Employee Stock Option Plan (ESOP). On the date of his death, Meselsohn was survived by his three children, and his wife, Kay Taylor, whom he had married recently.

Ms. Taylor and the children both asserted claims to shares of Sherwood stock, of which Meselsohn had been vested. Plaintiffs initially decided to pay the claim to Ms. Taylor in cash, but then sought legal advice from a partner of the defendant law firm, who advised the plaintiffs to do nothing, at that time. In the meantime, Sherwood stock, which ranged between $5.50 and $7.50 during the month of August, 1987, the time of Meselsohn's death, closing at $7.25 for the month, began to lose value precipitously, closing at $3.625 on November 2, 1987. In May, 1988, the shares were worth $1.75 per share and plaintiffs, on the advice of new counsel, commenced an interpleader action in Federal court. When the Federal court action was commenced, Sherwood's per share value stood at $1.75.

Ms. Taylor counterclaimed in the Federal court action. Eventually she reached a settlement with the children for an undisclosed sum, whereby the children relinquished any interest in the ESOP benefits. Thereafter, the Federal court ruled that Ms. Taylor had been entitled to a prompt distribution of the stock, and that she was entitled to damages from the present plaintiffs representing the diminution in Sherwood's share value resulting from the delay in the distribution of the stock to her. At the time of this order, Sherwood's stock had declined to approximately $.50 per share. Before the commencement of a hearing ordered to determine the reasonable market value of the shares at a time distribution should reasonably have been made, the present plaintiffs settled with Ms. Taylor for $600,000.

Plaintiffs then commenced this action sounding in legal malpractice. Defendants moved to dismiss contending, *inter*

*alia*, that their advice was not the proximate cause of any loss to plaintiffs.

The IAS Court held that the attorney malpractice claim was viable.

If plaintiffs had the ability to publicly sell the stock which was "owed" to Ms. Taylor, they could reasonably contend that the advice given by defendants gave rise to the delay, which in turn subjected them to a market loss on the price of the stock. However, by virtue of a "Lockup" agreement, pursuant to which the parties could not publicly sell the shares until a future date, plaintiffs did not have the right to sell the shares "owed" to Ms. Taylor on the market. Therefore, they had the option of tendering stock to Ms. Taylor, or tendering cash on hand. Had they tendered cash from the coffers of the corporation, it would have been in an amount in excess of that eventually paid to Ms. Taylor in settlement. Hence, no damage arose from avoiding this course of conduct. Had they tendered stock, they would have divested themselves of an asset of declining value. However, the diminishing value of the stock was attributable to market factors, not legal advice given by defendants. In addition, the letters prepared by the plaintiffs indicate that they intended to pay the claim in cash. Moreover, and more importantly, had stock been offered, Ms. Taylor had the right to, in effect, demand a cash payment by exercising a "put" granted her, i.e., the right to tender the shares back to the plaintiffs in exchange for the market value at the time. This option, without doubt, would have been exercised. It is, therefore, entirely speculative to assume that the claim would have been paid in stock, and that even if it had, Ms. Taylor would have kept these essentially non-negotiable securities rather than demanding cash for them at the market price from plaintiffs.

The speculative nature of plaintiffs' claim is revealed by the arguments in plaintiffs' brief that Ms. Taylor "might have held onto the stock", or that she "might also have been able to sell the stock privately," or that plaintiffs "would have sought" in some undefined manner to "lift the LOCKUP" or "reach some other agreement". All of these contentions are couched in terms of gross speculations on future events and point to the speculative nature of plaintiffs' claim. There was, therefore, a failure by plaintiffs to show that defendants' actions were a proximate cause of any loss to them.

Plaintiffs further contend that the erroneous advice given by defendants caused them to incur legal fees. To the contrary, it has not been shown that the advice given by defen-

dants caused plaintiffs to incur these fees. Rather, it appears that it was the advice of substitute counsel which led to the subsequent course charted by plaintiffs, and the resultant legal expenses incurred. Concur—Murphy, P. J., Ellerin, Asch and Kassal, JJ.