**FARRELL FAMILY VENTURES, LLC, Plaintiff,**

v.

**SEKAS & ASSOCIATES, LLC, Nicholas G. Sekas and Mariner's Bank, Defendants.**

No. 11 Civ. 3779(KBF).

United States District Court, S.D. New York.

May 11, 2012.

---

43. RA Mem. at 7.

44. *See id.* at 7–8.

45. 28 U.S.C. § 1292(b).

46. *AroChem*, 176 F.3d at 619.

Michael Jason Cohen, Winne, Banta, Hetherington, Basralian & Kahn, P.C., Hackensack, NJ, for Plaintiff.

Cathleen Ann Giannetta, Cori Ann Rosen, Thomas Arthur Leghorn, Wilson Elser Moskowitz Edelman & Dicker LLP, Nicholas George Sekas, Sekas & Associates, L.L.C., New York, NY, for Defendants.

## MEMORANDUM & ORDER

KATHERINE B. FORREST, District Judge.

Plaintiff, through its counsel Lazarus & Lazarus, P.C., and particularly, Harlan M. Lazarus, Esq. (individually and collectively with the Lazarus firm "Lazarus"), initiated this action in New York state court on April 19, 2011. Defendants removed it to

this Court on June 3, 2011. (Docket No. 1.) Plaintiff's claims for attorney negligence, negligent misrepresentation, breach of fiduciary duty and breach of contract all sound in legal malpractice, arising out of Sekas & Associates, LLC and Nicholas G. Sekas's (collectively "Sekas") representation of plaintiff in connection with a loan agreement entered into by plaintiff in June 2003 (the "Loan Agreement"). (*See* Compl. *passim.*)

On March 9, 2012, defendants notified the Court that they intended to move to implead Lazarus and to disqualify him and his firm as counsel for plaintiff. The Court permitted defendants to make that motion on or before March 28, 2012, but ordered the parties to proceed with discovery, completing fact discovery by April 20, 2012 and expert discovery by May 14, 2012. (*See* March 14, 2012 Minute Entry; Docket Number 40.)

Having reviewed the parties' subsequent motion papers, the Court now GRANTS defendants' motion.

## BACKGROUND

The facts relevant to the instant motion are largely undisputed, except as indicated below.

In June 2003, plaintiff made a $3.5 million loan to Timothy Martin ("Martin"), guaranteed by Martin Cadillac, LLC ("Martin Cadillac"), a car dealership. (Compl. ¶ 15; Giannetta Decl. Ex. Q ("Proposed 3d-Party Compl.") ¶ 14.) Sekas represented Martin and Martin Cadillac in connection with the loan and Loan Agreement. (Compl. ¶ 19; Proposed 3d-Party Comp. ¶ 20.) Until the loan closed, plaintiff was represented by Schwartz & Solomon, P.C. (Lazarus Aff. Ex. B 68:8–9.)

The Loan Agreement contained an affirmative covenant that "[Martin] and/or [Martin Cadillac] shall maintain an insurance policy on [Martin]'s life, proving a death benefit in the amount of $3,500,000 irrevocably naming [plaintiff] as the beneficiary thereof." (Giannetta Decl. Ex. C at 6(1)(ii).) At the loan closing, Martin and Martin Cadillac gave plaintiff an undertaking to obtain the life insurance policy. (Lazarus Aff. Ex. C.) Martin did obtain a policy (the "Policy"), which properly named one of plaintiff's representatives as the beneficiary, but which, unbeknownst to the parties at the time, was not irrevocable. (*See* Proposed 3d-Party Compl. ¶¶ 34–35, 38.)

In the spring of 2004, plaintiff retained Sekas (*id.* ¶ 21; Compl. ¶ 27) to represent it, according to plaintiff, on the loan and Loan Agreement (Pl.'s Opp. at 5). That representation continued until January 2010 (*id.*; Proposed 3d-Party Compl. ¶ 30), during which period, plaintiff asserts, Sekas also represented Martin and Martin Cadillac (Pl.'s Opp. at 5).

The original maturity date in the Loan Agreement was June 1, 2006. (Proposed 3d Party Compl. ¶ 16.) During Sekas's representation of plaintiff, however, plaintiff agreed to extend the original term of the Loan Agreement four times, each time entering a separate Note and Loan Modification Agreement with Martin and Martin Cadillac. (*Id.* ¶¶ 22–29.) As a result of those modifications, the maturity date on the loan was extended until July 31, 2010. (*Id.* ¶ 29.) Each of the four Note and Loan Modification Agreements contains the following acknowledgment:

> The parties herein retain the firm of Sekas and Associates, LLC as counsel to prepare this Agreement and waive any conflict of interest against the Law Firm of Sekas & Associates recognizing that the parties had ability to obtain independent counsel of their choice to review the Modification Agreement.

(Lazarus Aff. Ex. E.)

After Sekas, plaintiff retained Lazarus as its counsel in connection with the loan

and Loan Agreement. (*See, e.g.,* Proposed 3d-Party Compl. ¶ 31.) Shortly after Lazarus's retention in January 2010, Mr. Lazarus commenced a dialogue with Martin and Martin Cadillac's then counsel, Leo Leyva, Esq., regarding their financials, their compliance with the loan agreements and the amount due on the loan. (*See* Giannetta Decl. Ex. O at Lazarus 00825.) Particularly, on February 26, 2012, Mr. Lazarus asked Mr. Leyva "is the life insurance in place?" (*Id.* at Lazarus 00837.)

Separately, on March 2, 2010, at the request of plaintiff's representative, Marguerite Farrell, Martin faxed Ms. Farrell a March 27, 2007 summary of the Policy, indicating that Michael and Anne Farrell, plaintiff's director and his wife, and GMAC Financial Services ("GMAC") were the named beneficiaries. (*See* Lazarus Aff. Exs. G–H.) The fax indicates that it was originally transmitted by American General, the insurance provider, to Martin on March 1, 2010 at 11:05 p.m. (*Id.*)

On March 24, 2010, Martin executed a Change of Beneficiary form, changing the beneficiary on the Policy from Mr. and Mrs. Farrell, to Martin's son. (*Id.* Ex. I; Giannetta Decl. Ex. G.) On that form, Martin signed the following certification:

> The Policy Owner(s) warrants that the above-referenced beneficiary change is not subject to any prior agreements [or] contractual obligations ... which restrict, limit, or otherwise prohibit such change of beneficiary as contemplated. The Policy Owner(s) acknowledges and agrees that in the event any obligations become known subsequent to the above-referenced beneficiary change being made, which if then-known to [American General], would have caused [American General] not to process the beneficiary change on the policy (or not to process the beneficiary change without the consent of a party other than the Policy

Owner(s)), the beneficial change will become immediately void ....

(*Id.* Ex. I; Giannetta Decl., Ex. G.)

On March 25, 2012, Lazarus transmitted a notice of default to Martin and Martin Cadillac. That notice includes "[f]ailure to maintain life insurance naming Lender as Beneficiary" as one of the alleged violations of the Loan Agreement. (Lazarus Aff. Ex. J; Giannetta Decl. Ex. H.) The parties dispute when Lazarus became aware of the beneficiary change. Implicit in defendants' proposed third-party allegations (and explicit in its arguments on this motion) is an assertion that Lazarus knew of the change when it sent the notice of default. (*See* Proposed 3d-Party Compl. ¶¶ 41–42, 47–49.) Plaintiff, however, asserts that Martin concealed the change in beneficiary and that the reference to the Policy in the notice of default was because plaintiff "had not received a current document naming [plaintiff] as beneficiary," not because Lazarus knew of the change. (Pl.'s Opp. at 7.) Lazarus's affirmation and exhibits provides no indication of, or support for, when he first learned of the Policy change.

On April 28, 2010, plaintiff, through Lazarus, commenced an action in New York State court against Martin and Martin Cadillac (the "Martin Complaint"), seeking monetary relief in the amount of the outstanding balance on the loan and to take immediate possession of the collateral in connection with the Loan Agreement. (Lazarus Aff. Ex. L ¶¶ 8, 14, 21, 26, 38; *see also id.* Ex. H.) The notice of default was incorporated by reference into the Martin Complaint and attached as Exhibit B (*e.g., id.* Ex. B. ¶ 7), but the Policy was not specifically mentioned (*e.g. id. passim; see also* Pl.'s Opp. at 8 ("The Policy ... was not subject of a claim in the Martin Complaint.")). On September 28, 2010, plaintiff obtained a default judgment against

Martin for $2,707,534.26 in connection with the Martin Complaint, representing the amount due on the loan plus interest. (Lazarus Aff. Ex. M.)

On June 25, 2010, Martin Cadillac filed for bankruptcy (the "Bankruptcy"), resulting in an automatic stay. (Proposed 3d-Party Compl. ¶ 52; Pl.'s Opp. at 8.) The entirety of Martin Cadillac's assets were subject to the Bankruptcy. (Proposed 3d-Party Compl. ¶ 57.) According to defendants, plaintiff, through Lazarus, entered an appearance in the Bankruptcy on June 30, 2010 and on October 13, 2010, filed a proof of claim, including a claim for the amount it was owed on the Loan Agreement. (*Id.* ¶¶ 53, 55–56.) Lazarus participated in the Bankruptcy. (Pl.'s Opp. at 18, 21.)

At the time of the Loan Agreement, plaintiff had signed a subordination agreement, under which it acknowledged that GMAC had a superior lien on the collateral of Martin Cadillac. (Proposed 3d-Party Compl. ¶ 58.) As a result of that agreement and the Bankruptcy, defendants admit, plaintiff "would only be entitled to recover any funds remaining after the superior interest of GMAC had been satisfied," and plaintiff "could never recover the full proceeds owing on the [l]oan." (*Id.* ¶¶ 59, 61.) On GMAC's motion, it was granted relief from the automatic stay for the vehicles and parts inventory at the car dealership. (*id.* ¶ 60.)

On May 23, 2011, Martin committed suicide. (Lazarus Aff. Ex. O.) On July 8, 2011, American General paid Martin's son the Policy benefits. (*Id.* Ex. P; Giannetta Decl. Ex. I.) Plaintiff asserts that such payment was made without any notice to plaintiff or GMAC. (Pl's Opp. at 9.) On July 9, the Bankruptcy Court converted the Bankruptcy from Chapter 11 to Chapter 7. (*Id.*)

*The Instant Action*

Over a month before Martin's suicide, plaintiff commenced this action against Sekas. (*See* Compl.) While the complaint "does not assert a cause of action specific to the failure to ascertain the status of the Policy" (Pl.'s Opp. at 22), the action is premised generally on allegations that defendants failed to identify, remedy and properly protect plaintiff's interest regarding breaches of the Loan Agreement by Martin and Martin Cadillac, and that, but for such misconduct, plaintiff would have been able to collect the amount outstanding on the loan. (*See* Compl. ¶ 103, *passim.*) Plaintiff's expert, John P. Zampino, also mentions the Policy explicitly in his report, stating that the Policy "could have been and would have been by an attorney acting with appropriate diligence" reviewed and made irrevocable. (Giannetta Decl. Ex. N.)

*The Proposed Third–Party Claims*

Defendants seek leave to assert third-party claims against Lazarus for contribution and indemnification based on allegations that Lazarus was a "but for" cause of plaintiff's inability to collect the balance of the loan. (Proposed 3d-Party Compl. ¶¶ 50, *passim.*) Defendants allege that Lazarus breached his duty to plaintiff by, among other things, "failing to enforce [plaintiff's] right to the Policy from the date the Policy was changed, or March 24, 2010, through Martin's death in [May] 2011." (*See id.* ¶ 49; Defs.' Mem. at 4; *see also* Lazarus Aff. Ex. O.) Specifically, defendants suggest that Lazarus should have conducted due diligence for plaintiff (Proposed 3d-Party Compl. ¶ 68), rectified the alleged irrevocability of the policy (*id.* ¶ 70), taken action to revert the beneficiary on the Policy back to plaintiff's representatives (*id.* ¶ 41), made a claim against the Policy on plaintiff's behalf (*id.* ¶¶ 42, 47, 71), sought to enjoin the insurance compa-

ny from paying the death benefits to Martin's son (*id.* ¶ 48) and prosecuted plaintiff's claims against the estate of Martin (*id.* ¶ 71). Defendants also allege that in addition or in the alternative, Lazarus "insufficiently prosecuted [plaintiff's] claims in the Bankruptcy." (*Id.* ¶ 71; *see also id.* ¶ 65.)

## LEGAL MALPRACTICE CAUSE OF ACTION

■ In order to state a claim for legal malpractice, a party must allege that (1) the attorney was negligent; (2) such negligence was a proximate cause of plaintiff's losses; and (3) actual damage. *E.g., Flutie Bros. LLC v. Hayes,* 04 Civ. 4187(DAB), 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006). As defendants acknowledge (Defs.' Mem. at 6), the proximate cause requirement is a "high bar to attorney malpractice liability, seek[ing] to insure a tight causal relationship exists between the claimed-injuries and the alleged malpractice, and demand[ing] a nexus between loss and injury." *Flutie Bros.,* 2006 WL 1379594, at *5 (internal quotation marks omitted). In order to plead causation adequately, the party must show that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." *Id.* (internal quotation marks omitted). Where the asserted effect of counsel's alleged actions or omissions is purely speculative, a motion to dismiss may be granted. *See, e.g., AmBase Corp. v. Davis Polk & Wardwell,* 8 N.Y.3d 428, 834 N.Y.S.2d 705, 709, 866 N.E.2d 1033 (2007) (affirming dismissal of complaint where "there [was] no way to know whether the advice not given" would have altered the underlying action); *Sherwood Grp. v. Dornbush, Mensch, Mandelstam & Silverman,* 191 A.D.2d 292, 594 N.Y.S.2d 766, 768 (1st Dep't 1993) (where party's contentions were couched in "gross speculations on future events" and claims were "speculative in nature," dismissal was warranted).

■ Regarding the negligence prong, a lawyer's conduct falls below the applicable standard of care when he "fail[s] to exercise the ordinary reasonable skill and knowledge commonly possessed by a member the legal profession." *McCoy v. Feinman,* 99 N.Y.2d 295, 301, 755 N.Y.S.2d 693, 785 N.E.2d 714 (2002) (internal quotation marks omitted). An attorney's "selection of one among several reasonable courses of action," however, "does not constitute malpractice." *Rosner v. Paley,* 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (1985). Even where a complaint "poses several other alternatives which might have been pursued," if it alleges "no more than an error of judgment," the allegations do not rise to the level of malpractice, and the complaint may be dismissed. *Id.*

## DISCUSSION

*Third–Party Claims Against Lazarus*

■■ Federal Rule 14(a) allows a defending party to implead a third party "who is or may be liable to it for all or part of the claim[s] against it." Fed.R.Civ.P. 14(a). The purpose of impleader is

> to avoid two actions which should be tried together to save the time and cost of a re-duplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant.

*Dery v. Wyer,* 265 F.2d 804, 806–07 (2d Cir.1959). Although the decision of whether to permit impleader or not is within the district court's discretion, *see, e.g., id.* at 807, it is well settled in this Court, as both parties note, that "[t]imely motions for leave to implead non-parties should be

freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 458 (S.D.N.Y. 1984) (cited in Defs.' Mem. at 8; Pl.'s Opp. at 9–10); *see also Crews v. Cnty. of Nassau,* 612 F.Supp.2d 199, 204 (E.D.N.Y. 2009) (explaining that a court, in exercising its discretion, may consider "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted" (internal quotation marks omitted)).

■ Based on the *Shafarman* standard, plaintiff argues that defendants' proposed third-party claims are "obviously unmeritorious" and, if permitted, would unduly delay resolution of this action and otherwise prejudice plaintiff. (*See* Pl.'s Opp. at 10.) The Court disagrees.

### 1. *Obviously Unmeritorious*

Plaintiff contends that defendants' proposed third-party claims are "obviously unmeritorious" for two reasons: (1) Lazarus's chosen course of action, despite his attendant omissions, could not be negligent as a matter of law (*see id.* at 13); and (2) "there is no doubt that insofar as the Policy is concerned, the proximate cause of [plaintiff's] injury [was] the revocability of the policy," and the nexus between Lazarus's alleged negligence and plaintiff's injury is speculative (*see id.* at 11–12). At this point in the proceedings—and taking no position on the ultimate merits—the Court is not persuaded that defendants' proposed third-party allegations fail to state a claim.

### a. *Alleged Negligence*

As an initial matter, there is a factual dispute between the parties regarding when Lazarus learned about the change of beneficiary. Defendants assert that Lazarus knew of the change as of his March 25, 2010 notice of default. (*Compare* Proposed 3d-Party Compl. ¶¶ 41–42, 47–49; Defs.' Mem. at 3, 7; Defs.' Reply at 1–2 *with* Pl.'s Opp. at 7, 11.) If such assertion is proven true by a preponderance of the evidence, that would certainly be significant. Given the liberal standard of review for the merits of proposed third-party claims, *see, e.g., Shafarman,* 100 F.R.D. at 458 (considering whether impleader would foster an *"obviously* unmeritorious claim" (emphasis added)); *Crews,* 612 F.Supp.2d at 204 (considering whether the third-party complaint "states a claim on which relief can be granted"), and that defendants have not yet had an opportunity to depose Lazarus (*see* Defs.' Mem. at 9), this Court assumes the truth of defendants' assertions for purposes of this motion.

Even if Lazarus did not know about the change in beneficiary and his notice of default referred only to Martin's failure to provide an updated version of the Policy (*see* Pl.'s Opp. at 7), however, defendants still have a plausible claim for contribution against Lazarus for his alleged failure to conduct due diligence on behalf of plaintiff in connection with the Loan Agreement (Proposed 3d-Party Compl. ¶ 68).

According to plaintiff, "[t]he specific circumstance that allowed the Policy proceeds to be paid to [Martin's son] was the failure of prior counsel to obtain an irrevocable policy." (Pl.'s Opp. at 2.) Neither defendants nor Lazarus were plaintiff's counsel at the time of Martin and Martin Cadillac's undertaking to obtain an irrevocable policy. Thus, the Policy-related allegations as to both defendants and Lazarus relate to their alleged failure to conduct

due diligence to ensure that the Policy, after it was obtained, complied with the Loan Agreement.

Defendants had nearly six years in which to uncover the revocability of the Policy and rectify it—a point which plaintiff's expert makes. (Giannetta Decl. N.) But Lazarus was plaintiff's counsel for a year and a half prior to American General paying Martin's son the life insurance proceeds, during which time the same could be said of Lazarus. It is, thus, plausible that a fact-finder could find Lazarus to bear some fault for the loss on the Policy. *See generally Rosner,* 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 ("The rule of apportionment applies when two or more tort-feasors have shared, albeit in various degrees, in the responsibility by their conduct or omissions in causing an accident, in violation of the duties they respectively owed to the injured person." (internal quotation marks omitted)). Further, plaintiff asserts that the reference to the Policy in the notice of default was based on it not having a current copy of the Policy; accordingly, a fact-finder could plausibly find that Lazarus was negligent for failing to request a current copy of the Policy at any point thereafter.

If Lazarus did know of the change in beneficiary, there is also a plausible negligence claim for his alleged failure to make a claim on the Policy, to try to enjoin payment of the life insurance proceeds to Martin's son, to seek to impose a constructive trust on those proceeds or, even in any way, to put the life insurance company on notice of plaintiff's contractual right to be irrevocably named as the beneficiary.

■ As set forth above, the Change of Beneficiary form states that if American General learns of any prior contractual obligation which would have prohibited the change of beneficiary, the beneficial change "will become immediately void." (Lazarus Aff. Ex. I; Giannetta Decl. Ex.

G.) Even if Lazarus did not know from the form that notice to American General would have voided the policy, notice of contested claims commonly prompts insurance companies to file federal interpleader actions and to pay the proceeds into court. *See, e.g., Travelers Insur. v. Johnson,* 579 F.Supp. 1457, 1461 (D.N.J.1984); *Metro Life Ins. Co. v. Benevent,* No. 90 Civ. 6768(LAP), 1993 WL 437757 (S.D.N.Y. Oct. 22, 1993). In such circumstances and in constructive-trust actions, both New Jersey and New York law recognize a prior contractual right to be an irrevocable or continued beneficiary to be superior to the right of a subsequently-named beneficiary. *See, e.g., Travelers,* 579 F.Supp. at 1460–63; *Markwica v. Davis,* 64 N.Y.2d 38, 40–42, 484 N.Y.S.2d 522, 473 N.E.2d 750 (1984); *Salinas v. Salinas,* 187 Misc. 509, 515–16, 62 N.Y.S.2d 385 (N.Y.Sup.Ct. 1946).

With regard to a constructive-trust action, plaintiff argues that defendants cannot maintain that Lazarus is liable for not initiating such an action because, given the six-year statute of limitation, he can still do so. (*See* Pl.'s Opp. at 3, 15.) In fact, plaintiff asserts that if he is impleaded, he would now be "compelled" to initiate such an action against Martin's son. (*Id.* at 3.) It is plausible that a fact-finder could find such an argument for not bringing a constructive-trust action sooner unpersuasive or, in any event, find the delay unreasonable.

Last, defendants allege that Lazarus could have brought a specific-enforcement action to reinstate plaintiff as the beneficiary on the Policy. (*See* Proposed 3d-Party Compl. ¶ 41.) Plaintiff acknowledges that "New York's election of remedies doctrine would not have barred [plaintiff's] action for breach, *and* an action to specifically enforce the insurance requirement of the 2003 Loan Agreement." (Pl.'s Opp. at

14 (emphasis added) (citing *Dexter Bishop Co. v. B. Redmond & Son, Inc.,* 58 A.D.2d 755, 756, 396 N.Y.S.2d 652 (1st Dep't 1977)).) While plaintiff could not have recovered on both such actions, before Lazarus obtained a default money judgment in connection with the Martin Complaint, Martin Cadillac filed for bankruptcy. It is not "obviously unmeritorious" for defendants to maintain, for instance, that given the Bankruptcy, automatic stay and Subordination Agreement, an attorney of ordinary skill would have abandoned the Martin Complaint for damages in favor of a specific-enforcement action regarding the Policy. (*See* Proposed 3d-Party Compl. ¶¶ 61, 67.)

Taken together, Lazarus's alleged failure to pursue any of the foregoing options in favor of pursuing the Martin Complaint and this malpractice action cannot be so clearly characterized as a mere "selection of one among a number of reasonable courses of action" for this Court to find, at this stage of the proceedings, that defendants' proposed third-party claims fail as a matter of law. *See Rosner,* 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553.

### b. *Probable Cause*

■ Regarding the probable cause element of malpractice, plaintiff asserts that "there is no doubt that insofar as the Policy is concerned, the proximate cause of the injury is on account of the revocability of the Policy." (Pl.'s Opp. at 11.) Under New York law an injury can have more than one proximate cause. *See, e.g., Caruolo v. John Crane, Inc.,* 226 F.3d 46, 56 (2d Cir.2000) ("It's not necessary for a defendant[ ] ... to be the sole or even the dominant cause of [the plaintiff's] injuries in order to be considered proximate cause."); *Forte v. City of Albany,* 279 N.Y. 416, 422, 18 N.E.2d 643 (1939); *see also Rosner,* 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553. Although defendants argue, in part, that Lazarus's conduct was a

superseding and intervening act of negligence (Defs.' Opp. at 8), their proposed third-party claim for contribution anticipates that both they and Lazarus could be found to be proximate causes of plaintiff's losses and, thus, proportionately liable to plaintiff. (*See* Proposed 3d-Party Compl. at 72); *see also* (Defs.' Reply at 4); *Rosner,* 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553.

Nor does the Court find persuasive plaintiff's argument that defendants' proposed third-party claims depend on "gross speculations on future events" and so, even if true, fail to establish probable cause as a matter of law. *Sherwood Grp.,* 594 N.Y.S.2d at 768; (*see* Pl.'s Opp. at 11–13). Particularly, plaintiff posits that the proposed allegations assume (1) the "success" of an action to have the beneficiary changed back, despite no basis for emergent preliminary relief and the potential for Martin to have asserted defenses such as waiver, estoppel or laches; and (2) the timely implementation of an irrevocable change of beneficiary "*prior* to what, unfortunately, was Martin's intent all along, his suicide." (*Id.* at 11–12 (emphasis original).)

The Court has already indicated that it is plausible that defendants could establish the unreasonableness of Lazarus's alleged omissions regarding the Policy based, in part, on the relative likelihood that those alternatives, if pursued, would have avoided plaintiff's loss on the loan. *See Flutie Bros.,* 2006 WL 1379594, at *5. Faced with competing beneficiary claims, courts routinely enforce contractual provisions providing for irrevocable or continued beneficiaries, even where the contracting parties have been in breach of those provisions for a number of years. *See, e.g., Aetna Life & Casualty Co. v. Spain,* 556 F.2d 747 (5th Cir.1977) (applying New Jersey law); *Markwica,* 64 N.Y.2d at 40–42, 484

N.Y.S.2d 522, 473 N.E.2d 750 (rejecting defendant's conclusory assertions of laches). There is also no requirement that a party assert its claim to a policy prior to the policy-holder's death or even prior to the insurer's payment of the proceeds, as plaintiff, itself, acknowledges by its stated intent to initiate a constructive-trust action now. *See, e.g., Travelers Insur.,* 579 F.Supp. at 1461 (interpleader actions filed after death); *Markwica,* 64 N.Y.2d at 40–42, 484 N.Y.S.2d 522, 473 N.E.2d 750 (constructive trust action filed more than two years after death and payment of proceeds). In addition, there was a month-and-a-half long period after Martin's death before American General paid the proceeds to his son, in which a claim on the Policy would quite plausibly have prompted the insurer to initiate an interpleader action and to deposit the proceeds with the Court instead. *See, e.g., Travelers Insur.,* 579 F.Supp. at 1461; *Metro Life Ins. Co.,* 1993 WL 437757.

Based on the foregoing, and at this stage of the proceedings, the Court cannot conclude that defendants' proposed third-party claims are so "obviously unmeritorious" that impleader should be denied on that basis.

### 2. *Prejudice to Plaintiff and Undue Delay of Trial*

■ Plaintiff argues that it would be prejudiced if defendants were permitted to implead Lazarus because that would unduly delay the resolution of this action and would deprive plaintiff of the counsel of its choice. (Pl.'s Opp. at 16–19.) Given the efficiencies to be gained by impleader in this case, the Court does not find the relatively short delay to warrant denying defendants' motion. Additionally, even if the Court were to deny defendants' impleader motion, the Court would disqualify Lazarus, depriving plaintiff of its counsel.

Defendants posit that "impleader would not necessarily complicate this case because Sekas' claim for indemnity and contribution as against Harlan Lazarus is objectively established by the discovery to date *and the only additional discovery required would be a deposition of Lazarus."* (Defs.' Opp. at 9 (emphasis added),) As such, once plaintiff retains new counsel, only a short extension of the discovery period will be needed. Permitting such a small extension is more efficient than managing the prosecution of an entirely new action. (*See* Defs.' Reply at 8 ("If defendants are not permitted to proceed in this forum with the third-party complaint, defendants will be forced to commence an action against Lazarus directly.").)

Plaintiff counters that if impleaded, Lazarus would seek leave to commence a fourth-party action against Martin's son and, potentially also, American General, further delaying and complicating this case. (Pl.'s Opp. at 16, 19.) While the Court will not prohibit Lazarus from making his own impleader motion, the Court notes its skepticism about such a motion's chances for success. First, it is not clear how Martin's son or American General "is or may be liable" to Lazarus, plaintiff's *counsel. See* Fed.R.Civ.P. 14(a)(1). Second, as set forth above, the purpose of impleader is "to avoid two actions which should be tried together to save the time and cost of reduplication of evidence, to obtain consistent results from identical or similar evidence," *Dery,* 265 F.2d at 806–07, and to combine "derivative, contingent claims," *Shafarman,* 100 F.R.D., at 458. It is unclear to the Court at this juncture what overlapping evidence, if any, there would be between the instant claims sounding in legal malpractice—and based on significant allegations unrelated to the Policy—and an action seeking to impose a constructive—trust on Martin and/or pursuing some unspecified claim against

American General, or how the latter action could properly be characterized as derivative of, or contingent on, plaintiff's claims. Accordingly, the Court discounts any delay attributable to Lazarus's potential impleader motion.

Plaintiff also asserts prejudice based on the need, and cost, of having to retain new counsel. (Pl.'s Opp. at 17–18.) The Court would have granted defendants' disqualification motion under New York Rule of Professional Conduct 3.7, however, independent of the impleader motion. *See* N.Y. R. Prof'l Conduct 3.7. Even if Lazarus were not a party to this action, defendants have indicated that they would likely try to establish that his negligence, particularly regarding the Policy, was a superseding and intervening cause of plaintiff's loss that absolved defendants of liability. (*See* Defs.' Mem. at 8, 11; Defs.' Reply at 4, 8–9); *see also* N.Y. R. Prof'l Conduct 3.7; *Losquadro v. Carltun on the Park*, 24 Misc.3d 1235(A), 901 N.Y.S.2d 900 (N.Y.Sup.Ct.2009). The Court finds that potential testimony from Lazarus could be sufficiently necessary to warrant disqualification. *See Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994) ("The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court. Disqualification may be required only when it is likely that the testimony to be given by counsel is necessary." (internal citation and quotation marks omitted)).

### 3. *Timeliness of Motion*

█ Last, plaintiff argues that defendants' motion should be denied as untimely. (Pl.'s Opp. at 16–18.) Only three months elapsed between plaintiff's production of Lazarus's notice of default (Lazarus Aff. Ex. I) as part of a bulk production (*see id.* Ex. R) and defendants' service of a subpoena *duces tecum* on Lazarus (*see* Giannetta Decl. Exs. L–M). Within days

of Lazarus's first production pursuant to that subpoena, defendants sought leave to make the instant motion. Under such circumstances, the Court cannot say that defendants "deliberately delayed or w[ere] derelict" in bringing their motion. *See Crews*, 612 F.Supp.2d at 204.

### *Lazarus's Disqualification*

█ Once Lazarus is impleaded as a third-party defendant, plaintiff will have the right to assert directly against him any claim it might have arising out of the same transaction or occurrence as its original claims, creating a clear conflict of interest for both Mr. Lazarus and his firm. *See Schenck v. Hill, Lent & Troescher*, 130 A.D.2d 734, 516 N.Y.S.2d 37 (2d Dep't 1987); Fed.R.Civ.P. 14(a)(3); *see also* N.Y. R. Prof'l Conduct 1.7. It is also highly likely that Lazarus will be a witness on significant issues of fact related to the third-party claims. *See* N.Y. R. Prof'l Conduct 3.7(a)-(b). Accordingly, both Mr. Lazarus and Lazurus & Lazurus, P.C. are hereby disqualified as plaintiff's counsel.

### CONCLUSION

In light of the foregoing, the Court GRANTS defendants' motion to assert third-party claims against Lazarus and to disqualify him as plaintiff's counsel. Defendants shall file their proposed third-party complaint with the Court forthwith.

Plaintiff shall have 30 days from the date of this Order to enter an appearance of successor counsel. Failure to do so may result in dismissal of this action for failure to prosecute. *See generally Rowland v. Cali. Men's Colony*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel.").

In light of plaintiff's counsel's disqualification, the Court adjourns the expert discovery and summary judgment deadlines of May 14, 2012. The parties shall appear for an in-person conference with the Court on June 13, 2012 at 1:30 p.m. At that conference, the Court will set a near-in schedule for any discovery related to Lazarus, the remaining expert discovery (which should be very limited) and for summary judgment briefing.

The Clerk of Court is directed to terminate plaintiff's counsel and to close the motion at Docket Number 36.

SO ORDERED.