# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**457**

**CA 13-00907**

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, LINDLEY, AND VALENTINO, JJ.

---

LINCOLN TRUST, AS CUSTODIAN FOR DANIEL
ELSTEIN, M.D., ROLLOVER IRA AND DANIEL
ELSTEIN, INDIVIDUALLY AND AS BENEFICIAL
OWNER OF LINCOLN TRUST,
PLAINTIFFS-APPELLANTS,

V                                          MEMORANDUM AND ORDER

ALFRED D. SPAZIANO, DEFENDANT,
ALBERT M. MERCURY AND PHILLIPS, LYTLE,
HITCHCOCK, BLAINE AND HUBER, LLP,
DEFENDANTS-RESPONDENTS.

---

DAVIDSON FINK LLP, ROCHESTER (DAVID L. RASMUSSEN OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS.

CONNORS & VILARDO, LLP, BUFFALO (LAWRENCE J. VILARDO OF COUNSEL), AND
HARRIS BEACH PLLC, FOR DEFENDANTS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Onondaga County
(Anthony J. Paris, J.), entered March 8, 2013. The order, among other
things, granted the motion of defendants Albert M. Mercury and
Phillips, Lytle, Hitchcock, Blaine and Huber, LLP, for summary
judgment dismissing plaintiffs' complaint against them.

It is hereby ORDERED that the order so appealed from is
unanimously affirmed without costs.

Memorandum: Plaintiffs commenced this legal malpractice action
seeking damages arising from the alleged negligence of Albert M.
Mercury, Esq. (defendant), who represented Daniel Elstein (plaintiff)
at the closing of a $750,000 loan that plaintiff made to defendant
Alfred D. Spaziano. The closing occurred on September 12, 2001, and
the loan was secured by Spaziano's stock in Westview Commons
Apartments, Inc. (WCA), which owned and operated an apartment complex
(subject property) in the Town of Gates. John Hancock Mutual
Insurance Company (John Hancock) held a first mortgage on the subject
property while, unbeknownst to plaintiff, Monroe Funding held
secondary mortgages, one of which was filed eight days before
plaintiff closed on his loan to Spaziano.

The complaint alleges that defendant and his law firm (hereafter,
defendants) were negligent in, among other things, failing to notify
plaintiff that John Hancock had commenced a foreclosure action in

December 2001 with respect to the subject property because Spaziano had failed to make his mortgage payments in October and November of that year. Plaintiff did not learn of Spaziano's default on the John Hancock mortgage until January 2003, when Spaziano defaulted on the promissory note to plaintiff and WCA filed for bankruptcy. Based on Spaziano's default on the $750,000 promissory note, plaintiff enforced his security interest in the WCA stock. Plaintiff thereafter partnered with David Reidman, a real estate developer in Rochester, to purchase and manage the subject property.

Plaintiff and Reidman formed Trason Westview, LLC (Trason), with plaintiff owning 75% and Reidman owning 25% of the company. Together, plaintiff and Reidman secured financing from First Niagara Bank (First Niagara), purchased the subject property with the approval of Bankruptcy Court, and satisfied the John Hancock and Monroe Funding mortgages. Specifically, John Hancock received approximately $11 million to satisfy its mortgage, and Monroe Funding received $970,000 to satisfy its secondary mortgages. As plaintiff explained at his deposition, Monroe Funding, as holder of the secondary mortgages, accepted a significantly lower amount of money than the amount owed due to the risk of receiving even less money after a foreclosure sale.

Prior to closing title, plaintiff obtained an appraisal of the subject property, which was valued at approximately $14 million, some $2 million less than plaintiff and Reidman were expending to acquire the property. At the closing, plaintiff signed a general release in favor of Spaziano with respect to the unpaid promissory note. Plaintiff and Reidman thereafter sold the property for a profit, and plaintiffs commenced this legal malpractice action.

The complaint requested damages of $750,000 plus interest as calculated in the promissory note, and $3,000,000 in punitive damages. More than six years after the action was commenced, plaintiffs alleged another theory of damages in their bill of particulars. Specifically, plaintiffs alleged that, if defendants had notified plaintiff in a timely fashion of Spaziano's default on the John Hancock mortgage, plaintiff would have been able to satisfy the John Hancock mortgage for $809,941.97 less than he had to pay John Hancock 14 months later, and that defendants' negligence therefore cost plaintiffs $809,941.97. That figure was later reduced by plaintiffs to $703,435.80.

Defendants moved for summary judgment dismissing the complaint against them, contending, inter alia, that, because plaintiffs had profited from the purchase and sale of the subject property, they had sustained no damages as a result of defendants' alleged malpractice. Defendants also asserted that plaintiffs are not entitled to damages arising from the unpaid promissory note because plaintiff had released Spaziano from liability on that loan. Plaintiffs opposed the motion and cross-moved for partial summary judgment with respect to several causes of action. Supreme Court granted the motion and denied the cross motion. We now affirm.

To succeed on a claim of legal malpractice, a plaintiff must prove, inter alia, that the attorney's negligence was a proximate

cause of a loss that resulted in actual and ascertainable damages (*see Leder v Spiegel*, 9 NY3d 836, 837, *cert denied* 552 US 1257; *see also Hotaling v Sprock* [appeal No. 2], 107 AD3d 1446, 1446-1447).  Here, defendants met their initial burden of establishing that plaintiffs were not entitled to damages based on the unpaid promissory note inasmuch as the release given to Spaziano by plaintiff is valid and enforceable (*see Appel v Ford Motor Co.*, 111 AD2d 731, 732-733; *see also Gubitz v Security Mut. Life Ins. Co. of N.Y.*, 262 AD2d 451, 451; *Matter of Garvin*, 210 AD2d 332, 333) and, in opposition, plaintiffs failed to raise an issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).

With respect to plaintiffs' alternate theory of damages—that defendants' failure to notify plaintiff of Spaziano's default on the John Hancock mortgage cost plaintiff $703,435.80 in lost profits—we agree with the court that the theory is too speculative to survive defendants' motion for summary judgment (*see Bua v Purcelli & Ingrao, P.C.*, 99 AD3d 843, 847-848, *lv denied* 20 NY3d 857; *Perkins v Norwick*, 257 AD2d 48, 51; *Sherwood Group v Dornbush, Mensch, Mandelstam & Silverman*, 191 AD2d 292, 294-295; *Brown v Samalin & Bock*, 168 AD2d 531, 531-532).  As defendants point out, it is not clear that plaintiff could have obtained the necessary funding from First Niagara or any other lender to purchase the property in November 2001, 14 months earlier than the actual purchase date.  Moreover, it was not certain that Monroe Funding at that time would have accepted a steep reduction in the amount that it was owed on the secondary mortgages, or that plaintiff and Reidman would have been able to sell the subject property for the same price as they later did.  In addition, plaintiff acknowledged at his deposition that he would not have purchased the subject property without Reidman, who, according to plaintiff, was vital to the success of the venture.  Plaintiff did not meet Reidman until after he learned of Spaziano's default on the John Hancock mortgage.  As the court stated in its decision, there is no evidence that plaintiff "would have found an investor similar to Reidman at that time, or acceptable to Monroe Funding as the junior mortgage holder."

Finally, because plaintiffs sustained no actual damages and, in fact, profited from the sale of the subject property, we conclude that they are not entitled to an award of punitive damages.

Entered:  June 20, 2014                    Frances E. Cafarell
                                           Clerk of the Court