OPINION OF THE COURT
 

 Rosenblatt, J.
 

 This appeal involves the statute of limitations in a legal malpractice action implicating a qualified domestic relations order (QDRO) under the Federal Employee Retirement Income Security Act of 1974 ([ERISA] 29 USC § 1001
 
 et seq.).
 
 Plaintiff, the wife in an underlying divorce action, sued her former attorneys alleging that they negligently failed to secure preretirement death benefits under her ex-husband’s employee benefit plan. The trial court and a divided Appellate Division concluded that the action was time-barred. Because neither plaintiff’s stipulation of settlement in the divorce action nor the divorce judgment gave plaintiff a right to the survivor benefits she seeks, we conclude that the ensuing malpractice action accrued no later than the day the divorce judgment was entered. Measured from that day, this action is time-barred and we therefore affirm.
 

 L
 

 Plaintiff and her former husband married in 1969. Under the husband’s employee benefit plan, a surviving spouse or other designee would be eligible to receive either retirement benefits (if the employee-spouse retired) or survivorship benefits (if the employee-spouse died before retirement). The couple separated in 1985, after the husband’s interest in the plan had vested. In January 1986, plaintiff hired defendant lawyer Kenneth Feinman of defendant law firm Siegel, Kelleher & Kahn to represent her in the divorce. On June 23, 1987, Feinman and the husband’s attorney entered the following oral stipulation of settlement, which Feinman read into the record in open court:
 

 
 *299
 
 “[I]t is agreed by the parties that [plaintiff] shall receive a portion of [the husband’s] pension plan calculated with recourse pursuant to the formulas set forth in the cases of
 
 Majauskas
 
 and
 
 Szulgit,
 
 with the percentage being calculated as follows: [plaintiff] shall receive fifty per cent of a fraction calculated by dividing the number of months of marriage to the date of the action for divorce being commenced by the number of months that [the husband] has in the plan at the time of his retirement. * * *
 

 “[T]he pension shall be divided pursuant to the figures I have just indicated by recourse to a Qualified Domestic Relations Order which my office shall prepare and submit to the Court either simultaneously with or shortly after the judgment of divorce.”
 

 Feinman also stated on the record that he would submit a proposed judgment of divorce. Defendants concede that Feinman never prepared the QDRO or the judgment. Instead, the husband’s attorney prepared and filed the proposed judgment, which was entered in the county clerk’s office on June 14, 1988. The stipulation of settlement was incorporated but not merged into the judgment of divorce. Plaintiffs ex-husband later remarried.
 

 Feinman also represented plaintiff in a Family Court support action against her ex-husband that concluded on July 24, 1991. There is no record evidence that plaintiff had further contact with Feinman or his firm regarding the stipulation, divorce judgment, QDRO or employee benefit plan until September 1994, when plaintiffs ex-husband died before retirement. Plaintiff — still unaware that Feinman had never filed the QDRO — then informed Feinman of her ex-husband’s death. Over the ensuing year, defendant firm sought unsuccessfully to obtain for plaintiff the preretirement death benefits payable under her ex-husband’s employee benefit plan. The plan administrator ultimately determined that because there was no QDRO naming plaintiff as the surviving spouse under the plan, she was ineligible under ERISA to receive preretirement death benefits.
 

 Unable to obtain those benefits for its client, Feinman’s firm formally advised plaintiff on January 9, 1996 that it was clos
 
 *300
 
 ing her file. On June 12, 1996 (nine years after the settlement stipulation, eight years after the divorce judgment and five years after the Family Court proceeding), plaintiff brought the present legal malpractice claim, alleging that defendants negligently failed to secure preretirement death benefits under the ex-husband’s employee benefit plan.
 

 Supreme Court granted defendants’ CPLR 3211 (a) (5) motion to dismiss on grounds that the three-year limitations period had run. A divided Appellate Division affirmed. The majority held that the malpractice claim accrued no later than June 14, 1988, when the divorce judgment was entered. They reasoned that on that day, plaintiff became ineligible to be considered the ex-husband’s surviving spouse for purposes of receiving survivor benefits under his employee benefit plan. The dissenters would have held, and plaintiff argues before this Court, that the three-year limitations period did not begin to run until September 1, 1994, the date of her ex-husband’s death. The dissenters reasoned that until the ex-husband’s death, plaintiff could not have pleaded actual damages caused by defendants’ negligence. The dissenters also contended, and plaintiff argues here, that this case qualifies for the continuous representation toll of
 
 Shumsky v Eisenstein
 
 (96 NY2d 164 [2001]).
 

 Plaintiff appeals as of right based on the two-Justice dissent on a question of law
 
 (see
 
 CPLR 5601 [a]), and we now affirm. In addressing plaintiff’s claims, we must examine not only the applicable limitations period for attorney malpractice claims, but also the statutory and decisional law governing stipulations, domestic relations orders and employee benefit plans. We take each in turn.
 

 IL
 

 Under the statute of limitations, the time within which a plaintiff must commence an action “shall be computed from the time the cause of action accrued to the time the claim is interposed” (CPLR 203 [a]). While courts have discretion to waive other time limits for good cause
 
 (see
 
 CPLR 2004), the Legislature has specifically enjoined that “[n]o court shall extend the time limited by law for the commencement of an action” (CPLR 201;
 
 see Fourth Ocean Putnam Corp. v Interstate
 
 
 *301
 

 Wrecking Co.,
 
 66 NY2d 38, 43 [1985];
 
 see generally
 
 Siegel, NY Prac § 33, at 40 [3d ed 1999]).
 
 [1]
 

 An action to recover damages arising from an attorney’s malpractice must be commenced within three years from accrual
 
 (see
 
 CPLR 214 [6]). A legal malpractice claim accrues “when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court”
 
 (Ackerman v Price Waterhouse,
 
 84 NY2d 535, 541 [1994]). In most cases, this accrual time is measured from the day an actionable injury occurs, “even if the aggrieved party is then ignorant of the wrong or injury”
 
 (id.).
 
 “What is important is when the malpractice was committed, not when the client discovered it”
 
 (Shumsky,
 
 96 NY2d at 166;
 
 Glamm v Allen,
 
 57 NY2d 87, 95 [1982]).
 
 [2]
 
 Though we have recognized tolls on this three-year limitations period under the continuous representation doctrine
 
 (see Shumsky
 
 at 167-168), we have recognized no exception to measuring the accrual date from the date of injury caused by an attorney’s malpractice. Thus, the key issue on this appeal is when plaintiffs actionable injury occurred.
 

 In a legal malpractice action, a plaintiff must show that an attorney “failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession”
 
 (Darby & Darby v VSI Intl.,
 
 95 NY2d 308, 313 [2000] [citations and internal quotation marks omitted]). In addition, the plaintiff must show that the attorney’s breach of
 
 *302
 
 this professional duty caused the plaintiff’s actual damages
 
 (see Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood,
 
 170 AD2d 108, 114 [1st Dept 1991],
 
 affd
 
 80 NY2d 377 [1992],
 
 rearg denied
 
 81 NY2d 955 [1993];
 
 see also
 
 2 Dobbs, Torts § 485, at 1387 [2001]).
 

 Feinman concedes he was negligent in representing plaintiff in her divorce. His concession, however, does not end the case. The parties dispute which negligent acts or omissions caused what injury, and, most critically, they disagree as to when plaintiff’s actionable injury occurred so as to trigger accrual of the malpractice claim. To resolve these disputes, we must examine the statutory and decisional law governing stipulations of settlement and distributions under employee benefit plans.
 

 Ill
 

 Stipulations not only provide litigants with predictability and assurance that courts will honor their prior agreements
 
 (see Kaplan v Kaplan,
 
 82 NY2d 300, 307 [1993]), but also promote judicial economy by narrowing the scope of issues for trial
 
 (see Hallock v State of New York,
 
 64 NY2d 224, 230 [1984]). To achieve these policy objectives, a stipulation is generally binding on parties that have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their stipulation to a properly subscribed writing or enter the stipulation orally on the record in open court
 
 (see
 
 CPLR 2104; Siegel, NY Prac § 204, at 323;
 
 see also Hallock
 
 at 230;
 
 Covert v Covert,
 
 50 AD2d 622, 623 [1975]).
 

 When a stipulation meets these requirements, as it does here, courts should construe it as an independent contract subject to settled principles of contractual interpretation
 
 (see Keith v Keith,
 
 241 AD2d 820, 822 [3d Dept 1997];
 
 De Gaust v De Gaust,
 
 237 AD2d 862, 862 [3d Dept 1997]). As with a contract, courts should not disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress
 
 (see e.g. Hallock,
 
 64 NY2d at 230;
 
 Matter of Frutiger,
 
 29 NY2d 143, 150 [1971]); or unless the agreement is unconscionable
 
 (see Christian v Christian,
 
 42 NY2d 63, 73 [1977];
 
 Mosler Safe Co. v Maiden Lane Safe Deposit Co.,
 
 199 NY 479, 485 [1910]) or contrary to public policy
 
 (see e.g. Eschbach v Eschbach,
 
 56 NY2d 167, 171 [1982]); or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties’ agreement
 
 (see e.g. Keith,
 
 241 AD2d at 822).
 

 In representing plaintiff at the settlement of her matrimonial action, Feinman placed on the record the parties’ agree
 
 *303
 
 ment regarding the ex-husband’s employee benefit plan. He stated that the couple had agreed to divide the “pension” according to the equitable distribution formula of
 
 Majauskas v Majauskas
 
 (61 NY2d 481 [1984]). Under that case, vested rights in spouses’ employee benefit plans are marital property to the extent that the employee acquired plan benefits between the date of marriage and the commencement of the divorce action (see
 
 id.
 
 at 485-486). Here, the stipulation clearly expressed the parties’ intention to award plaintiff
 
 retirement benefits
 
 under the plan. Critically, however, in no way did the stipulation provide or even suggest that the parties had agreed to allocate to plaintiff
 
 preretirement death benefits,
 
 and we cannot read the stipulation as if it had.
 

 Plaintiff’s reliance on
 
 Majauskas
 
 is unavailing. Critically,
 
 Majauskas
 
 governs equitable distribution of all pension-related benefits — both retirement and survivorship — earned during the marriage. Parties to a matrimonial action might agree that
 
 Majauskas
 
 will govern equitable distribution of an employee-spouse’s pension benefits, yet also agree that the nonemployee spouse will receive only retirement benefits and not preretirement death benefits
 
 (see e.g. Von Buren v Von Buren,
 
 252 AD2d 950, 950-951 [1998]). Thus,
 
 Majauskas can
 
 govern equitable distribution of preretirement death benefits earned during the marriage, but mere mention of
 
 Majauskas
 
 does not by itself establish the parties’ intent to allocate those benefits. Likewise, a stipulation’s conclusory representation that the parties agreed to allocate to the nonemployee spouse “all the benefits available * * * under the applicable section of the Internal Revenue Code” — which authorizes but does not mandate assignment of survivor benefits
 
 (see
 
 26 USC § 414 [p]) — does not evince the parties’ intent to distribute each such benefit.
 

 Because Feinman’s stipulation was not ambiguous and did not cover preretirement death benefits, it did not entitle plaintiff to receive those benefits; nor did the judgment, which merely incorporated that stipulation. Nevertheless, plaintiff asserts that her actionable injury also resulted from Feinman’s continuing failure to obtain the QDRO. Had Feinman obtained the QDRO (plaintiff’s argument goes), he could have asserted plaintiffs eligibility to receive preretirement death benefits. To discern whether the timeliness analysis turns on Feinman’s failure to obtain the QDRO, we turn next to the law governing domestic relations orders and employee benefit plans.
 

 
 *304
 
 IV.
 

 The employee benefit plan in question is subject to ERISA.
 
 [3]
 
 Under ERISA, a divorce judgment terminates a spouse’s right to be deemed a “surviving spouse” under the ex-spouse’s employee benefit plan
 
 (see Kahn v Kahn,
 
 801 F Supp 1237, 1245-1246 [SD NY 1992],
 
 affd
 
 2 F3d 403 [2d Cir 1993]). ERISA also prohibits plan administrators from assigning plan benefits (29 USC § 1056 [d] [l]),
 
 [4]
 
 except under a “Qualified Domestic Relations Order” (29 USC § 1056 [d] [3] [A]-[D]).
 
 [5]
 
 After a divorce, only a QDRO can designate a former spouse to be a “surviving spouse” for purposes of allocating benefits under ERISA
 
 (see
 
 29 USC § 1056 [d] [3] [F]). This exception to ERISA’s anti-assignment rule is not subject to judicial expansion
 
 (see Boggs v Boggs,
 
 520 US 833, 851 [1997]).
 

 A proper QDRO obtained pursuant to a stipulation of settlement can convey only those rights to which the parties stipulated as a basis for the judgment. An alternative result would undermine litigants’ freedom of contract by allowing QDROs to create new rights — or litigants to generate new claims— unexpressed in the settlement stipulation. Thus, for example, a court errs in granting a domestic relations order encompassing rights not provided in the underlying stipulation
 
 (De Gaust,
 
 237 AD2d at 862-863), or a QDRO more expansive than an underlying written separation agreement
 
 (see Von Buren,
 
 252 AD2d at 950-951).
 

 
 *305
 
 Here, because Feinman’s settlement stipulation did not establish plaintiffs right to preretirement death benefits and the divorce judgment did not provide for any, the entry of a QDRO (necessarily reflecting the terms of the stipulation or divorce judgment) would not have rendered plaintiff eligible to receive those benefits. We therefore conclude that Feinman’s failure to include preretirement death benefits in either the stipulation or the judgment, and not his negligent failure to obtain a QDRO, was the cause of plaintiffs injury.
 

 This result accords with sound public policy. The United States Supreme Court has recognized that ERISA’s anti-assignment provision “reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task”
 
 (Guidry v Sheet Metal Workers Natl. Pension Fund,
 
 493 US 365, 376 [1990]). Just as we cannot know 15 years after the settlement stipulation whether plaintiff and her (now deceased) ex-husband negotiated preretirement death benefits under the employee benefit plan, we cannot know whether the ex-husband intended to deprive his new spouse (or other designee) of the presumptive right to claim those same survivor benefits. It is precisely this kind of second-guessing that ERISA seeks to prevent by prohibiting assignment of plan benefits except pursuant to a valid QDRO
 
 (see
 
 29 USC § 1056 [d] [1], [3] [A]-[D]).
 

 V.
 

 Because Feinman was negligent in failing to assert plaintiffs claim to preretirement death benefits in the settlement stipulation or judgment, we conclude that plaintiff suffered actionable injury on the day of the stipulation (June 23, 1987) , or at the latest, on the day the judgment incorporating the stipulation was filed in the county clerk’s office (June 14, 1988) . Because we perceive no reason that plaintiffs damages were not then sufficiently calculable to permit plaintiff to obtain prompt judicial redress of that injury, we conclude that plaintiff had a complete cause of action on the day the divorce judgment was filed. Inasmuch as plaintiff brought this action on June 12, 1996 — more than three years later
 
 (see
 
 CPLR 214 [6])— plaintiffs suit is time-barred
 
 (see
 
 CPLR 203 [a]).
 

 Plaintiff asserts, however, that the
 
 Shumsky
 
 continuous representation doctrine tolled the limitations period until
 
 *306
 
 defendants closed plaintiff’s file on January 9, 1996. We disagree. The continuous representation doctrine tolls the statute of limitations only where there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim. Here, the malpractice that caused plaintiffs injury was defendants’ failures in connection with the stipulation and judgment, and no further representation thereon was then contemplated.
 

 Even were we to grant plaintiffs argument that it was Feinman’s failure to obtain a QDRO that constituted actionable negligence, Feinman told the court that he would file the QDRO with the court “simultaneously with or shortly after the judgment of divorce.” Thus, plaintiff might have been justified in believing that Feinman continued to represent her on this specific matter until “shortly after” the 1988 entry of the divorce judgment, but not eight years later when plaintiff brought this action.
 

 Moreover, as the Appellate Division majority aptly noted, the limitations period could become incalculable were we to adopt plaintiffs argument that Feinman’s continuing failure to file the QDRO tolled the malpractice action under the continuous representation doctrine. Except where a date of discovery rule applies, our law cannot permit a limitations period to depend ón a continuing omission that can go on for decades. “The policies underlying a Statute of Limitations — fairness to defendant and society’s interest in adjudication of viable claims not subject to the vagaries of time and memory — demand a precise accrual date”
 
 (Ackerman,
 
 84 NY2d at 542).
 

 Finally, Feinman’s representation of plaintiff in the Family Court action did not sufficiently toll the limitations period to save plaintiffs cause of action. That action was unrelated to the QDRO. Even were we to deem the limitations period tolled until the support action concluded in 1991, another five years elapsed before plaintiff filed suit in 1996. Thus, even under this hypothesis, the three-year limitation of CPLR 214 (6) still renders this action untimely.
 

 Plaintiffs remaining contentions are either unpreserved or without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . In
 
 Duffy v Horton Mem. Hosp.
 
 (66 NY2d 473, 475 [1985]), however, we recognized the relation back doctrine in third-party practice. Likewise, in
 
 Borgia v City of New York
 
 (12 NY2d 151 [1962]), we recognized the continuous treatment doctrine later codified in CPLR 214-a, and in
 
 Shumsky
 
 (96 NY2d at 168) we extended the continuous treatment toll to cases of continuous representation by an allegedly negligent attorney. We address
 
 Shumsky
 
 and plaintiffs continuous representation argument in part V (at 305-306).
 

 [2]
 

 . As we observed in
 
 Blanco v American Tel. & Tel. Co.
 
 (90 NY2d 757, 772 [1997]), if there is injustice in the operation of CPLR 214 (6), the Legislature has not seen fit to ameliorate the statute’s effects by enacting a date of discovery rule. We note that the Legislature has used date of discovery principles to soften CPLR 214 for “foreign object” cases of medical malpractice (see
 
 e.g. Rodriguez v Manhattan Med. Group,
 
 77 NY2d 217, 218 [1990]; CPLR 214-a), exposure to Agent Orange during the Vietnam War (see CPLR 214-b) and exposure to other toxic substances (see
 
 e.g. Matter of New York County DES Litig.,
 
 89 NY2d 506, 511-512 [1997]; CPLR 214-e). The Legislature has even revived causes of action after the applicable limitations period had expired (see CPLR 214-e [reviving time-barred actions to recover damages for personal injury caused by infusion of AIDS-tainted blood products]). If the Legislature chooses not to apply date of discovery principles in other professional malpractice settings, this Court should not tread where the Legislature refuses to go (see CPLR 201).
 

 [3]
 

 . ERISA is a comprehensive federal statute “designed to promote the interests of employees and their beneficiaries in employee benefit plans”
 
 (Nealy v US Healthcare HMO,
 
 93 NY2d 209, 217 [1999],
 
 rearg denied
 
 93 NY2d 958). ERISA “subjects employee benefit plans to participation, funding and vesting requirements as well as rules regarding reporting, disclosure and fiduciary responsibility”
 
 (id.; see
 
 29 USC §§ 1001, 1021
 
 et seq.; see also Shaw v Delta Air Lines, Inc.,
 
 463 US 85, 90-91 [1983]).
 

 [4]
 

 . Under ERISA and the Internal Revenue Code, “assignment” includes “[a]ny direct or indirect arrangement * * * whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary” (26 CFR 1.401 [a]-13 [c] [1] [ii];
 
 see Robbins ex rel. Robbins v DeBuono,
 
 218 F3d 197, 203 [2d Cir 2000],
 
 cert denied sub nom. Novello v Robbins,
 
 531 US 1071 [2001];
 
 Wright v Riveland,
 
 219 F3d 905, 919 [9th Cir 2000]).
 

 [5]
 

 . ERISA defines a “Qualified Domestic Relations Order” to include a judgment or settlement of divorce “which creates or recognizes the existence of an alternate payee’s right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan” (29 USC § 1056 [d] [3] [B] [i] [I]).