Richard Davis, as Administrator of THE ESTATE OF C. ROBERT ALLEN III under Letters of Limited Administration issued January 21, 2014, Plaintiff,

against
Cohen & Gresser LLP, Defendants,


157930/14

For plaintiff: Judd Burstein, Esq.
For defendant: Gregory Joseph, Esq., of Joseph Hage Aaronson LLC


Charles E. Ramos, J.

Plaintiff Richard Davis (plaintiff) commenced this action on behalf of the estate of C. Richard Allen III (CRA) under Letters of Limited Administration (Letters of Administration) issued by the Surrogate's Court on January 21, 2014. Plaintiff's wholly-owned entity, non-party Excelsior Capital LLC (Excelsior) is a judgment creditor of CRA's estate (estate). Because the estate lacks sufficient funds to pay Excelsior's judgment, the Letters of Administration grants plaintiff limited authority to commence and prosecute an action on behalf of the estate against defendant Cohen & Gresser LLP (CG) who represented both CRA and CRA's son, Luke Allen, who was also CRA's guardian prior to CRA's death. 
In the second amended complaint (complaint), plaintiff alleges that CG committed legal malpractice by allowing the statute of limitations to run on RICO claims against CRA's former attorneys, Robert Neiman and Greenberg Traurig, LLP (GT).
CG now moves to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5) and (7).
Background
The allegations set forth herein are taken from the pleadings and assumed to be true for the purposes of disposition.
In 2004, fraudtser Christopher Devine tricked CRA and Excelsior, plaintiff's wholly owned company, into loaning him millions of dollars that Devine and his cronies (the Devine parties) stole. CRA personally guaranteed the Excelsior loans. After Excelsior's default under the loans, Excelsior sued CRA and Superior Broadcasting Co. (Superior), a company that CRA owned a majority interest in, to collect on $18 million of the personal guaranties that CRA executed (Excelsior action). Excelsior ultimately prevailed in the action, and obtained a judgment against CRA's estate,[FN1]
in December 2012 (Excelsior Capital, LLC v Superior Broadcasting Co., 101 AD3d 670 [2nd Dept 2012], lv denied 21 NY3d 857 [2013]).
Several years prior to CRA's death, in February 2007, CRA's wife, Grace Allen, commenced an Article 81 proceeding seeking the appointment of CRA's son, Luke Allen, as guardian to manage CRA's property. Luke was appointed as guardian for CRA in March 2008. As guardian, Luke's duties included overseeing any litigation to which CRA was a party. At that time, Luke was substituted into the Excelsior action as the defendant in lieu of CRA. 
2008 Retainer Agreement Between Luke, as CRA's Guardian and CG
In June 2008, Luke, as guardian of and on behalf of CRA, entered into a retainer agreement with defendant, CG for legal representation. According to plaintiff, the 2008 retainer agreement made it clear that the scope of CG's representation of CRA was broad and not limited to merely the Excelsior action.[FN2]

Under the umbrella of the 2008 retainer agreement, CG commenced an action in February 2009 in the Eastern District of [*2]New York on behalf of CRA, by Luke as guardian, against Devine and the companies he controlled for RICO, fraud, conspiracy, conversion, unjust enrichment, breach of fiduciary duty, and constructive trust (RICO action).
The Alleged Malpractice
According to the complaint in this action, the RICO action was meritorious and likely to be successful in securing a judgment in favor of CRA against the Devine parties. CG should also have brought RICO claims against CRA's former counsel and his law firm, Neiman and GT, because CG had actual knowledge at that time of facts necessary to assert RICO claims against them.
Plaintiff alleges that Neiman affirmatively assisted the Devine parties' fraud by falsely assuring CRA that his loans to Superior were sound when Neiman knew that Devine was diverting the monies for wrongful purposes, and that Neiman was lining his own pockets by virtue of his ownership interests in many of the companies to which CRA's money was transferred. Nonetheless, CG concluded at the time it brought the RICO action that there were no viable RICO claims against Neiman and GT. According to plaintiff, the four-year statute of limitations on CRA's RICO claims against Neiman and GT began to run in 2006 and expired in 2010.
In December 2010, Devine sued Luke personally in the RICO action. It was agreed that CG would represent Luke as a third party defendant and in his individual capacity in the RICO action because it was within the scope of the 2008 retainer agreement. 
CRA died on March 9, 2011. On March 24, 2011, CG and Luke signed a retainer agreement (2011 retainer agreement) which states that CG's representation was limited to the third-party complaint against Luke and states that "it does not encompass, nor does it engage the Firm to represent [Luke] in any matter not specifically described herein" (Exhibit F, annexed to the Stanley Aff.). On April 13, 2011, CRA's estate was probated and CRA's wife, Grace, was appointed as executor.
Despite the language of the 2011 retainer agreement, Luke states in his affidavit that, between the time of CRA's death in March 2011 and October 2011, it was explicitly understood between CG, Grace and Luke that CG would continue as counsel for the estate so as to continue broad scope of representation set out in the 2008 retainer agreement with respect to the RICO action (Luke aff., ¶ 21).According to Luke, it was also agreed that, rather than try to immediately push forward with the RICO action by substituting the estate as the plaintiff, the goals of the 2008 retainer agreement might be better accomplished less expensively by focusing on CG's continuing efforts to seek a federal criminal prosecution of Devine, pursuant to another retainer agreement dated 2011, which states that the engagement of CG "does not encompass, nor does it engage the Firm to [*3]represent [Grace, CRA's executrix] or the Estate of [CRA] in any matter not specifically described herein" (Exhibit I, annexed to the Stanley Aff.). Luke also states that, while he understood that as a technical matter, new retainer agreements would have to be executed between the estate and CG by reason of CRA's death, it was explicitly understood between Luke, Grace as executrix of CRA's estate and CG that CG would continue as counsel for the estate. According to Luke, in or around October 2011, primarily because CG had lost the Excelsior action and was not willing to continue representing the estate in the RICO action pursuant to a contingent fee arrangement, Grace made the decision to continue with CG as counsel in the RICO action.
Thereafter, on June 15, 2011, the estate, represented by Reed P. Whitemore, Esq., moved for substitution as counsel for the plaintiff in the RICO action in lieu of CG (Exhibit D, annexed to the Stanley Aff.). Farrell Fritz, P.C. and Camplo, Middleton & McCormick, L.L.P. also appeared on the estate's behalf in the RICO action in December 2011 and April 2012 (Exhibit A, annexed to the Stanley Aff.).
The estate, represented by its separate counsel, continued to ligate the RICO action for another three years, but never named any additional defendants (such as Neiman and GT) before settling with the Devine parties in May 2014 (Exhibit A, annexed to the Stanley Aff.). Meanwhile, CG represented the estate in the Excelsior action following CRA's death.Discussion
CG moves to dismiss the complaint on the grounds that it is time barred because plaintiff filed this action over three years after CRA's death, on March 9, 2011, which is the date on which CG's representation of CRA ended and the latest date on which the malpractice claim could have accrued. In the alternative, CG asserts that plaintiff fails to plead the element of causation because the estate's successor counsel's failure to bring the hypothetical RICO claims against Neiman and GT at the time it was substituted in as counsel for the estate severs the casual link between CG's representation with any alleged injuries.
Plaintiff argues that CG's representation could not have ended with CRA's death and that the statute of limitations was tolled by the continuous representation doctrine through the fall of 2011 when the court in the RICO action granted the estate's motion to be substituted as plaintiff, and that it has adequately alleged proximate cause.
I. Statue of Limitations
An action to recover damages arising from an attorney's malpractice must be commenced within three years from accrual. A legal malpractice claim accrues when all facts necessary to the cause of action have occurred and an injured party can obtain relief in court (CPLR 214 [6]; McCoy v Feinman, 99 NY2d 295, 300-01 [2002]).
The death of a client severs the attorney-client relationship (Pace v Raisman & Assoc., Esq., LLP, 95 AD3d 1185 [2d Dept 2012]). Thus, a legal malpractice claim commenced more than three years after the client's death is untimely as a matter of law (Id.). CRA died on March 9, 2011, and thus, the latest time that the malpractice claim could have accrued is at that time, which is more than three years before the instant action was commenced, on August 12, 2014. Because CG has demonstrated that the claim is untimely, the burden shifts to plaintiff to establish an exception to the applicable statute of limitations period (TIAA Global Invs., LLC v One Astoria Sq. LLC, 127 AD3d 75, 97-98 [1st Dept 2015]).
Plaintiff unpersuasively argues that the continuous representation doctrine tolls the limitations period. The "toll ceases to be operative when the representation in the particular matter comes to an end" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214.6, at 168 [2003 ed]). As stated supra, the death of CRA in March 2011 severed the attorney-client relationship with CG and thus, the doctrine of continuous representation cannot apply.
Moreover, application of the doctrine of continuous representation is limited to those situations where the attorney continues to represent the client in the same matter in which the malpractice occurred, and the parties had a "mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" (McCoy, 99 NY2d at 305-06). 
Plaintiff's allegations that CG led Luke to believe that it was representing the estate in the RICO action is belied by the relevant retainer agreements and court dockets from the time period at issue. The retainer agreements amongst the parties show that CG represented CRA, by Luke as his guardian, in the RICO case before CRA's death. The 2008 retainer agreement was between CG and Luke, as CRA's guardian; Luke's authority as guardian expired at CRA's death (see discussion below). After CRA's death, CG represented the estate in the Excelsior action, and CG represented the estate in connection with the federal investigation of Devine pursuant to the 2011 retainer agreement. In the 2011 retainer agreement (which pertains to the federal investigation of Devine), it specifically states that the engagement of CG "does not encompass, nor does it engage the Firm to represent [Grace, CRA's executrix] or the Estate of [CRA] in any matter not specifically described herein" (Exhibit I, annexed to the Stanley Aff.). 
CG's only role in the RICO action following CRA's death was to represent Luke in his individual capacity as a third party defendant (Exhibit A, annexed to the Stanley Aff.). On March 17, 2011, CG filed a Suggestion of Death Upon the Record in the RICO [*4]action as the "Former Attorneys for C. Robert Allen, III" (emphasis added). On June 15, 2011 (the same date that the estate entered into the 2011 retainer agreement with CG with respect to the federal Devine investigation), the estate, represented by Reed P. Whitemore, Esq., moved to be substituted as plaintiff in the RICO action (Exhibit D, annexed to the Stanley Aff.). In December 2011 and April 2012, Farrell Fritz, P.C. and Camplo, Middleton & McCormick, L.L.P. also appeared on the estate's behalf in the RICO action (Exhibit A, annexed to the Stanley Aff.). CG never formally appeared in the RICO action on behalf of the estate following CRA's death. To the extent that the 2008 retainer agreement articulated a broader scope of representation on CG's part and on CRA's behalf, this representation ended at CRA's death, in March 2011.
Given the documentary evidence showing that the estate had retained another attorney for the purpose of representation in the RICO action, it cannot be concluded that Luke was left with the reasonable impression that CG was actively addressing the estate's legal needs in that action (compare Shumsky v Eisenstein, 96 NY2d 164, 169 [2001]). 
The Court also rejects plaintiff's assertion that Mental Hygiene Law (MHL) § 81.21 (a) (20) supports its position that CRA's death did not sever the attorney-client relationship because Luke as CRA's guardian remained the plaintiff in the RICO action until the estate's motion to be substituted as plaintiff was granted, on October 25, 2011. The provision of the MHL that plaintiff cites to, § 81.21 (a) (20), refers to "those powers which may be granted" to a guardian, including the power to "defend or maintain any judicial action or proceeding ... until an executor ... is appointed" (emphasis added). In other words, a guardian may act for the deceased until an executor is appointed, albeit pursuant to a court order. This provision must be read in tandem with MHL § 81.36 (a) (3), which explicitly states that the death of an incapacitated person terminates a guardianship (compare In re Vita V. [Cara B.], 100 AD3d 913, 914 [2d Dept 2012] [following incapacitated person's death, the guardian was without authority to continue to represent her person and property in the absence of further order from the court]; with Matter of Gargaro, 4 Misc 3d 1003[A] [NY Sur 2004] [court authorized the guardianship to continue after the death of the incapacitated person],reversed on other grounds 23 AD3d 1099 [4d Dept 2005]). 
Thus, unless a court ruled otherwise at the time, Luke's authority as guardian for CRA expired upon CRA's death (MHL § 81.36 [a] [3]; In re Shannon, 25 NY3d 345, 350 [2015]; In re Vita V. [Cara B.], 100 AD3d at 914). Once Grace was appointed executrix of CRA's estate in April 2011, the authority to continue the RICO action on behalf of the estate belonged solely [*5]to Grace and not to any of CRA's legatees in their personal capacity (Gaentner v Benkovich, 18 AD3d 424, 426 [2d Dept 2005]).
II. Proximate Cause
Notwithstanding the untimeliness of the claim, plaintiff fails to allege that CG's negligence was the proximate cause of the estate's injury. The estate's successor counsel had "sufficient time and opportunity to adequately protect" the estate's rights by timely asserting a RICO claim against Neiman and GT (accord Maksimiak v Schwartzapfel Novick Truhowsky Marcus, P.C., 82 AD3d 652, 652 [1st Dept 2011]; see Perks v Lauto & Garabedian, 306 AD2d 261, 262 [2d Dept 2003] ["The introduction of new counsel serves as an intervening cause in a legal malpractice, severing the chain of causation between the negligent actions of an attorney and a plaintiff's injuries, so long as new counsel has sufficient opportunity to protect the plaintiffs' rights'"]).
A cause of action alleging violations of the RICO Action is governed by a four-year statute of limitations (Kenny v RBC Royal Bank, 22 AD3d 385, 386 [1st Dept 2005], lv denied 6 NY3d 705 [2006]). A RICO claim accrues when a plaintiff discovers or should have discovered the injury, regardless of when she discovered the underlying fraud (DiRaimondo v Calhoun, 131 AD3d 1194 [2d Dept 2015]).
Plaintiff alleges in this action that the four-year statute of limitations on the hypothetical RICO claim against Neiman and GT ran until "no later than the end of 2010" because CRA and Luke were on inquiry notice of the claim "no later than the end of 2006" (Complaint, ¶ 18). This allegation directly contradicts the allegations set forth in the RICO action complaint. In the RICO action complaint, it is alleged that CRA and his advisors had enough information to discover the Devine parties' scheme "by the end of 2007" (Exhibit A at ¶ 160, Exhibit B at ¶ 168, annexed to the Complaint). Therefore, the statute of limitations expired on the hypothetical RICO claim in late 2011, which was many months after CRA's death (in March 2011) terminated the attorney-client relationship with CG, and the estate's new counsel appeared (in June 2011).
Moreover, plaintiff maintains that CRA had "storm warnings" that should have prompted an inquiry into Neiman's entanglements with the Devine parties, "as early as 2005 but no later than 2006," which is when the statute of limitations on the RICO claim against Neiman and GT began to run. However, CRA could not have been on inquiry notice of these "storm warnings" in 2006 because, according to plaintiff's own submissions, CRA's mental capacity [*6]at that time was extremely diminished.[FN3]
Further, CRA's incapacity would have likely tolled the limitations period on the hypothetical RICO claim until Luke's appointment as guardian, in March 2008 (cf Burrowes v Combs, 25 AD3d 370, 371-72 [1st Dept], 7 NY3d 704 [2006]). Luke's and another attorney's purported knowledge of the storm warnings cannot be attributed to CRA for the purposes of inquiry notice until Luke's appointment as guardian, because the RICO claim belonged to CRA personally. 
The Court has considered plaintiff's remaining arguments and finds them unpersuasive.
Accordingly, it is hereby
ORDERED that defendant's motion to dismiss the second amended complaint is granted and the complaint is dismissed with costs and disbursements to defendant as taxed by the Clerk of the Court; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
Dated: March 24, 2016
ENTER:
_________________________
J.S.C.



Footnotes

Footnote 1:CRA died on March 9, 2011.

Footnote 2:The 2008 retainer agreement provides, in part, that CG was representing CRA, Luke as CRA's guardian, and Superior (together, the Allen parties), with respect to:

"defenses against Excelsior's claims, potential counter-claims against Excelsior and/or its principal Richard Davis [plaintiff herein], and potential cross-claims against various entities controlled by Christopher Devine ..." 




It is further understood and contemplated that the Firm [CG] will assist the Allen Parties in defending against the claims brought by Excelsior and evaluating whether to pursue the potential claims against Christopher Devine and others [Devine parties] described above, with the goal of maximizing the potential recovery to the Allen Parties" (emphasis added) (2008 retainer agreement, Exhibit B, annexed to the L. Allen Aff.).

Footnote 3:According to Grace's affidavit, CRA's memory had substantially deteriorated for several years prior to her commencement of an Article 81 proceeding seeking the appointment of a guardian for CRA, in February 2007.