Halstead v Fournia (2018 NY Slip Op 02525)





Halstead v Fournia


2018 NY Slip Op 02525


Decided on April 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

525226

[*1]DENNIS HALSTEAD et al., Respondents- Appellants,
v
BRAD FOURNIA et al., Appellants- Respondents.

Calendar Date: February 22, 2018

Before: Garry, P.J., McCarthy, Devine, Mulvey and Rumsey, JJ.


Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), for appellants-respondents.
E. Stewart Jones Hacker Murphy, LLP, Troy (David I. Iversen of counsel), for respondents-appellants.


Mulvey, J.

MEMORANDUM AND ORDER
Cross appeal from a judgment of the Supreme Court (Muller, J.), entered August 31, 2016 in Clinton County, upon a decision of the court in favor of plaintiffs.
The underlying facts of this matter are fully set forth in a prior decision of this Court (134 AD3d 1269 [2015]). Briefly stated, defendant Brad Fournia entered into a contract to cut timber on real property owned by defendant John Jamison and, during the course of the work, Fournia cut and removed more than 400 trees from plaintiffs' adjacent property. Plaintiffs thereafter commenced this action asserting, among other things, a
cause of action for violation of RPAPL 861. Following joinder of issue and discovery, Supreme Court granted summary judgment in favor of plaintiffs on the issue of liability, but found that questions of fact existed on the issue of damages. Upon plaintiffs' appeal, we first noted that no dispute existed as to whether defendants possessed a good faith belief that they had a legal right to harvest the subject trees and, consequently, an award of treble damages was not authorized. Observing that courts are entrusted with the discretion to award "the stumpage value or [$250] per tree, or both" for an unlawful taking of timber pursuant to RPAPL 861 (2), and that the parties had presented evidence as to more than one measure of damages, we concluded that a trial on the issue of damages was warranted (id. at 1270).
Thereafter, the parties stipulated to waive a trial on damages and have Supreme Court decide the case based on certain agreed facts. Insofar as is relevant here, the parties stipulated that 442 trees had been cut and removed and that, of those trees, 241 were nonmerchantable (having no stumpage value) and 201 were merchantable and had a collective stumpage value of $2,500. The parties further agreed that the potential damages that could be awarded upon the stipulated facts were "the stumpage value of the trees cut, $250.00 per tree cut and removed, or stumpage value and $250.00 per tree cut and removed." Finally, the stipulation provided that the award of damages would be subject to a 9% prejudgment interest rate. Yet, in its resulting damage award, Supreme Court failed to honor the parties' stipulation. While acknowledging that the parties had agreed that 201 of the trees were merchantable, Supreme Court nonetheless held that, in its view, merchantability should be defined as trees with a diameter of four inches or greater and that only 96 trees came within that description. The court then exercised its discretion to award $250 per tree for the 96 trees that it deemed merchantable, amounting to $24,000, but declined to award any damages for the remaining 346 trees that were cut and removed. Supreme Court likewise "decline[d] to be bound" to the 9% prejudgment interest rate agreed to by the parties, choosing instead to apply a prejudgment interest rate of 3% based upon its independent review of the interest rates applicable to financial instruments during the relevant time. Defendants now appeal and plaintiffs cross-appeal.
We begin our analysis with the recognition that courts have long favored and encouraged the fashioning of stipulations by parties to litigation and that "[s]trong policy considerations" favor the enforcement of such agreements (Denburg v Parker Chapin Flattau & Klimpl, 82 NY2d 375, 383 [1993]; see Hallock v State of New York, 64 NY2d 224, 230 [1984]). As the Court of Appeals has explained: "Stipulations not only provide litigants with predictability and assurance that courts will honor their prior agreements, but also promote judicial economy by narrowing the scope of issues for trial. To achieve these policy objectives, a stipulation is generally binding on parties that have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their stipulation to a properly subscribed writing or enter the stipulation orally on the record in open court" (McCoy v Feinman, 99 NY2d 295, 302 [2002] [citations omitted]; see Hallock v State of New York, 64 NY2d at 230; Mitchell v New York Hosp., 61 NY2d 208, 214 [1984]; Mann v Simpson & Co., 286 NY 450, 459 [1941]). When a stipulation satisfies these requirements, as it does here, it is to be construed as an independent contract subject to principles of contract interpretation (see Matter of Banos v Rhea, 25 NY3d 266, 276 [2015]; McCoy v Feinman, 99 NY2d at 302; Rainbow v Swisher, 72 NY2d 106, 109 [1988]; Fulginiti v Fulginiti, 127 AD3d 1382, 1384 [2015]). So construed, a valid stipulation may not be set aside "absent a showing of good cause such as fraud, collusion, mistake or duress; or unless the agreement is unconscionable or contrary to public policy; or unless it suggests an ambiguity indicating that the words [do] not fully and accurately represent the parties' agreement" (McCoy v Feinman, 99 NY2d at 302 [internal citations omitted]; accord Matter of Badruddin, 152 AD3d 1010, 1011 [2017], lv dismissed 30 NY3d 1080 [2018]; Matter of Kaczor v Kaczor, 101 AD3d 1403, 1404 [2012]; see Tverskoy v Ramaswami, 83 AD3d 1195, 1196 [2011]).
Applying these principles, we are in agreement with the parties that Supreme Court erred in deviating from their stipulation in rendering the damages award. No grounds have been shown to vacate the parties' clearly expressed agreement as to the merchantability of the various trees or the methodology to be used in formulating the award. As the parties here were "free to chart their own course [and] fashion the basis upon which [this] particular controversy [would] be resolved" (Cullen v Naples, 31 NY2d 818, 820 [1972] [internal citation omitted]; accord Mitchell v New York Hosp., 61 NY2d at 214), Supreme Court was not free to substitute its own judgment for that of the parties (see Durst v Grant, 92 AD3d 1195, 1196 [2012], lv denied 19 [*2]NY3d 810 [2012]). We must therefore determine, in the exercise of our discretion and in accordance with the parties' stipulation, the appropriate measure of damages to be awarded as a consequence of defendants' illegal removal of the 442 trees from plaintiffs' property.
The parties' stipulation sets forth three distinct measures of damages for defendants' conceded violation of RPAPL 861 — namely, "the stumpage value of the trees cut, $250.00 per tree cut and removed, or stumpage value and $250.00 per tree cut and removed."[FN1] The parties agree that, in accordance with this provision of the stipulation, the potential damages that may be awarded is limited to $2,500 (the stumpage value of the trees cut), $110,500 ($250 per tree cut and removed) or $113,000 (stumpage value plus $250 per tree cut and removed). Noting that compensatory damages are intended to assure that the plaintiff receives "fair and just compensation commensurate with the injury sustained" (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 489 [2007]; see Sharapata v Town of Islip, 56 NY2d 332, 335 [1982]), defendants urge us to render an award of $2,500, representing the stipulated stumpage value of the tress cut and removed. Plaintiffs, on the other hand, claim that such an award would be woefully inadequate and that statutory damages in the amount of $250 per tree are warranted here, given the sheer volume of trees that defendants removed from the roughly two-acre segment of their property and the overarching deterrent purpose of the statute.
As we articulated when this case was last before us, the current version of RPAPL 861 was enacted in 2003 "in an effort to deter the illegal taking of timber by increasing the potential damages for that activity" (134 AD3d at 1270-1271; see Senate Introducer Mem in Support, Bill Jacket, L 2003, ch 602 at 7; Mem of St Dept of Envtl Conservation, Bill Jacket, L 2003, ch 602 at 14). The legislation reflected "the growing value of the state's standing timber resources, both publicly and privately" (Senate Introducer Mem in Support, Bill Jacket, L 2003, ch 602 at 7), and was a response to the widely-perceived problem that the then-existing civil penalties for cutting or removing timber "d[id] not reflect the value of trees in today's market" or serve as a sufficient deterrent to the theft or destruction of timber (Mem of Legislative Bureau of the Office of the Attorney General, Bill Jacket, L 2003, ch 602 at 16; see Mem of Counsel for St Off of Parks, Recreation and Historic Preservation, Bill Jacket, L 2003, ch 602 at 21). Moreover, the history surrounding the legislation confirms that the increased civil penalties for the taking of timber were intended to deter not only the purposeful theft of timber, but also the illegal removal of timber by "loggers who do not ascertain the boundaries in which they harvest" (Mem of St Dept of Envtl Conservation, Bill Jacket, L 2003, ch 602 at 14, 24; see Senate Introducer Mem in Support, Bill Jacket, L 2003, ch 602 at 7-8). Perhaps best put by the Department of Environmental Conservation in its supporting memorandum: "Forested land in New York State [*3]is often property owned by absentee landowners, boundaries are often poorly marked, and commonly forested property is seldom surveyed. Consequently, loggers often cross boundary lines and harvest timber that belongs to other property owners.. . . This legislation . . . will provide for greater deterrence for the knowing offender while at the same time promot[ing] more diligence and care on the part of legitimate timber harvesters to prevent inadvertent trespass and timber theft" (Mem of St Dept of Envtl Conservation, Bill Jacket, L 2003, ch 602 at 14, 24 [emphasis added]). That the Legislature intended the heightened civil penalties of RPAPL 861 to apply with equal force to inadvertent takers of timber is further confirmed by the statutory scheme itself, which acknowledges that a trespasser's good faith belief in a legal right to harvest timber does not insulate that person from the imposition of statutory damages, "but merely saves him or her from having to pay the plaintiff treble damages" (Fernandes v Morgan, 95 AD3d 1626, 1628 [2012]; see RPAPL 861 [2]; Backus v Lyme Adirondack Timberlands II, LLC, 144 AD3d 1454, 1458 [2016]).
Considering the facts and circumstances of this case, and mindful of the overriding purpose and intent of RPAPL 861, we find that plaintiffs are entitled to statutory damages of $250 per tree for the 442 trees cut and removed (see RPAPL 861 [2]; cf. Krieg v Peters, 46 AD3d 1190, 1191-1192 [2007]). We emphasize that our discretionary determination in this regard is narrow and circumscribed by the parties' stipulation (see n, supra), which we are bound to honor.
With regard to prejudgment interest, Supreme Court similarly erred in failing to impose the 9% rate agreed to by the parties. As with the previously discussed provisions of the stipulation, no basis exists to disturb the parties' choice to employ this rate of prejudgment interest, which, we note, is mandated by the CPLR unless otherwise provided by statute (see CPLR 5001 [a]; 5004; see also Axtell v Kurey, 222 AD2d 804, 805 [1995], lv denied 88 NY2d 802 [1996]; Property Owners Assn. of Harbor Acres v Ying, 137 AD2d 509, 511 [1988]). Finally, as Supreme Court found, plaintiffs are statutorily entitled to the stipulated value of the costs incurred in maintaining this action (see RPAPL 861 [2]). To the extent that any of the parties' arguments have not been expressly addressed herein, they have been reviewed and determined to be without merit.
Garry, P.J., McCarthy, Devine and Rumsey, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded plaintiff $24,000 in damages for the timber unlawfully taken, together with prejudgment interest at a rate of 3%; such damages increased to $110,500, together with prejudgment interest at a rate of 9%; and, as so modified, affirmed.



Footnotes

Footnote 1: We note that this language differs slightly from the language of RPAPL 861 (2), which provides that a plaintiff may recover "the stumpage value or [$250] per tree, or both" for an unlawful taking of timber. Because the parties, through their stipulation, have defined the available measures of damages to be used in calculating an award to plaintiffs — as they were entitled to do (see generally Mitchell v New York Hosp., 61 NY2d at 214 [reiterating that parties to a civil dispute "may stipulate away statutory, and even constitutional rights"]) — we do not address whether RPAPL 861 (2) could be applied in such a way as to produce a damage award other than those that result from application of the measures of damages set forth by the parties in their stipulation.