Myristica, LLC v Camp Myristica, Ltd. (2022 NY Slip Op 00089)





Myristica, LLC v Camp Myristica, Ltd.


2022 NY Slip Op 00089


Decided on January 6, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 6, 2022

532202 532884
[*1]Myristica, LLC, Respondent,
v
Camp Myristica, Ltd., et al., Respondents, and David Kramer, Appellant, et al., Defendants.

Calendar Date:November 22, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Felt Evans, LLP, Clinton (Jay G. Williams III of counsel), for appellant.
Saunders Kahler, LLP, Utica (Merritt S. Locke of counsel), for Myristica, LLC, respondent.
Hancock Estabrook, LLP, Syracuse (Janet D. Callahan of counsel), for Camp Myristica, Ltd., respondent.
Harris Beach PLLC, Syracuse (Julian B. Modesti of counsel), for Ron E. Chugerman and Alyson Chugerman, respondents.
Costello Cooney & Fearon, PLLC, Syracuse (Matthew W. O'Neil of counsel), for Leslee Drogowitz, respondent.



Colangelo, J.
Appeals (1) from an order of the Supreme Court (Lambert, J.), entered September 9, 2020 in Otsego County, which, among other things, denied defendant David Kramer's motion to vacate a stipulation of settlement, and (2) from an order of said court, entered January 12, 2021 in Otsego County, which, among other things, denied defendant David Kramer's motion to reargue.
Defendant Camp Myristica, Ltd. (hereinafter the Camp) is a not-for-profit corporation that was formed in 2010 for the purpose of owning and operating a self-sufficient year-round communal property in Otsego County to serve as a nature and recreational camp for the entertainment, sport, recreation and enjoyment of its members. The Camp consists of a lodge, bunk house, renovated barn and three private residences situated on 100 acres of land. On February 2, 2010, plaintiff, a limited liability company formed and solely owned by defendant Ron E. Chugerman (hereinafter Chugerman), purchased the land on which the Camp is located for $300,000. In December 2010, the Camp was incorporated with three directors, who were also the Camp's officers — Chugerman, the president and treasurer, defendant David Kramer, the vice-president, and defendant Alyson Chugerman, the secretary and then wife of Chugerman. In August 2011, the Camp purchased the property from plaintiff for $300,000 and Chugerman, as president and treasurer of the Camp, executed the deed from plaintiff to the Camp and also executed the note and mortgage on behalf of the Camp. In order to have working capital, the Camp's bylaws, adopted by the directors in December 2011, set three tiers of corporate membership. The bylaws required premium members to make a $100,000 "capital contribution" to the Camp in exchange for, among other things, voting privileges and the privilege of being allowed to build homes on the Camp's property. Three homes, each valued at over $150,000, were constructed on the Camp's property. Premium members included Kramer and defendant Leslee Drogowitz. Kramer has maintained that the Chugermans never actually paid their $100,000 "fee" to become premium members, yet still constructed a home on the Camp's property.
In August 2017, plaintiff commenced this mortgage foreclosure action alleging that the Camp defaulted on its mortgage payments. Kramer answered and asserted counterclaims against plaintiff and cross claims against the Chugermans. As relevant here, Kramer asserted that Chugerman, as president and treasurer of the Camp, failed to make any mortgage payments to plaintiff, his wholly-owned limited liability company, and that plaintiff did not send a notice of default to the Camp before commencing the foreclosure action. Kramer also asserted that the Chugermans were not premium members. The Chugermans filed separate answers, denying the cross claims.
In 2018, Kramer moved for dismissal of the complaint against him, remove the Chugermans as officers and directors of the Camp and for an accounting. [*2]Supreme Court (Coccoma, J.) denied the motion, reserved on the issue of the Chugermans' removal pending an evidentiary hearing to take place in February 2019, and ordered Chugerman to provide a detailed accounting of the Camp, which was timely provided.[FN1] On the date of the hearing, the parties entered into a stipulation of settlement, placed on the record by counsel and restated by the court, that, among other things, resolved the original foreclosure action and any cross claims or counterclaims asserted by Kramer. As directed by the court, counsel for the Chugermans circulated a limited settlement agreement, after which Kramer moved to vacate the stipulation of settlement, reviving his previous challenge to the Chugermans' status as premium members and seeking a hearing to determine if they hold a premium membership in the Camp. The Chugermans cross-moved to enforce the stipulation (see CPLR 2104), and plaintiff cross-moved to compel Kramer to sign a written stipulation. The Camp and Drogowitz opposed Kramer's motion and supported the cross motions.
In February 2020, Supreme Court (Lambert, J.) ordered a hearing on factual issues — whether the Chugermans made a $100,000 contribution entitling them to be premium members of the Camp and, if they did not, whether they are premium members that were allowed to participate in the Camp's corporate decisions. Due to COVID-19 concerns, the court solicited briefs and evidence from the parties related to the Chugermans' payment of the $100,000 premium membership fee. By order entered in September 2020, Supreme Court denied Kramer's motion to vacate the stipulation of settlement, finding that "[t]he stipulation placed on the record was extensive and included acknowledgments relating to [the Chugermans' status] as premium members." The court further found that Kramer "had the benefit of disclosure prior to entering into the stipulation . . . [and he] failed to go forward with a showing of good cause such as fraud, collusion, mistake or duress or that the stipulation [was] unconscionable or contrary to public policy." The court then granted the cross motions and directed Kramer to execute the written stipulation. It also determined that the Chugermans were premium members and that Kramer had affirmatively waived his right to challenge their status as such by virtue of his acknowledgment or failure to correct the repeated references to the Chugermans as premium members during the recitation of the stipulation.
Thereafter, Kramer moved to reargue on the basis that, among other things, the issue of whether the Chugermans had paid for their premium membership had yet to be resolved. Kramer also filed an order to show cause seeking to prohibit the Camp from changing the composition of its board pending the sale of the property. The Camp and the Chugermans cross-moved to, among other things, hold Kramer in contempt, and plaintiff joined in said motions. By order entered in January 2021, Supreme Court[*3], among other things, denied both of Kramer's applications, "So-Ordered" the stipulation and denied the cross motions to hold Kramer in contempt. Kramer appeals from the orders entered in September 2020 and January 2021. We affirm.[FN2]
"A stipulation of settlement placed on the record by counsel in open court is binding, all the more so when, as here, the parties contemporaneously confirm their acceptance on the record" (Birches at Schoharie, L.P. v Schoharie Senior Gen. Partner LLC, 169 AD3d 1192, 1194 [2019] [citations omitted]; see CPLR 2104). "To be enforceable, an open court stipulation must contain all of the material terms and evince a clear mutual accord between the parties" (Birches at Schoharie, L.P. v Schoharie Senior Gen. Partner LLC, 169 AD3d at 1194 [internal quotation marks and citations omitted]). "When a stipulation meets these requirements, as it does here, courts should construe it as an independent contract subject to settled principles of contractual interpretation [and] . . . courts should not disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress or unless the agreement is unconscionable" (McCoy v Feinman, 99 NY2d 295, 302 [2002] [citations omitted]; see Hallock v State of New York, 64 NY2d 224, 230 [1984]; New York State Workers' Compensation Bd. v A & T Healthcare, Inc., 171 AD3d 1277, 1278 [2019]; Liquori v Liquori, 106 AD3d 1249, 1250 [2013]).
Initially, Kramer argues that the stipulation of settlement was entered upon a mutual mistake of the parties and that Chugerman allegedly engaged in fraud in his fiduciary role as the Camp's treasurer. However, these issues are unpreserved for our review as they were not raised before Supreme Court (see HSBC Bank USA, N.A. v Sage, 196 AD3d 1016, 1017 [2021]; Prindle v Guzy, 179 AD3d 1169, 1171 [2020]). Kramer further contends that the stipulation should have been set aside as fraud existed as to a material fact, namely, the Chugermans' misrepresentation in the court-ordered accounting that they paid the premium membership fee. However, "nondisclosure is not the equivalent of fraud" sufficient to warrant setting aside a settlement agreement (Dayton v Dayton, 175 AD2d 427, 428 [1991], lv denied 78 NY2d 863 [1991]). Further, as Supreme Court noted, "Kramer had access to what he now asserts is deficient accounting at the time he entered into the stipulation." In light of this, as well as the due diligence that Kramer could have exercised by making additional specific requests had he found the accounting deficient, he cannot now claim that Supreme Court erred in denying his motion to vacate the stipulation on the basis of fraud as to a material fact (see Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d 269, 278-279 [2011]).
Moreover, as the record reveals, Kramer was represented by counsel from the inception of the proceedings (see New York State Workers' Compensation Bd. v A & T Healthcare, Inc., 171 AD3d at [*4]1278). Indeed, after the stipulation was read into the record, counsel indicated to Supreme Court (Coccoma, J.) that he had nothing further to add. Kramer and the other parties were then allocuted by the court during which Kramer testified under oath that he understood the terms of the stipulation as outlined on the record, that it was intended to resolve his counterclaims and cross claims, that he voluntarily entered into the agreement, that he agreed to sign any documentation necessary to carry out the terms of the agreement and that he was satisfied with the resolution of the lawsuit in this manner. In these circumstances, Supreme Court (Lambert, J.) properly denied Kramer's motion to vacate the stipulation of settlement.
We have examined Kramer's remaining claims and find them to be wholly without merit.
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that order entered September 9, 2020 is affirmed, with one bill of costs.
ORDERED that the appeal from the order entered January 12, 2021 is dismissed.



Footnotes

Footnote 1: Kramer was provided with approximately 2,800 documents in response to his discovery demands, as well as the accounting performed by the Camp's accountant. The accounting contained, among other things, a receipt log referencing the Chugermans' $100,000 membership contribution.

Footnote 2: Inasmuch as "no appeal lies from the denial of a motion to reargue," Kramer's appeal from the January 2021 order must be dismissed (Ditech Fin. LLC v Levine, 176 AD3d 1521, 1522 [2019]).